No. 19,321.

THE COWLEY COUNTY NATIONAL BANK, *Appellee,* v. THE
  RAWLINS-DOBBS ELEVATOR COMPANY, *Appellee,* and THE
  TITLE GUARANTY & SURETY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. WAREHOUSE RECEIPTS—*Ownership of Goods Sufficiently Stated.* The provision of the Uniform Warehouse Receipts Act that if a receipt is issued for goods of which the warehouseman is owner, the fact of such ownership must be stated, is met by naming the warehouseman as the person from whom the goods were received, and subject to whose order they are held.

2. SAME—*New Receipt—Different Date from Original Receipt—Valid.* The statute providing that where a part of the grain represented by a warehouse receipt is delivered, a new receipt may be issued for the remainder, which must bear the same date and recite its relation to the original, has no application to a transaction by which one holding a receipt as security surrenders it to the debtor in exchange for a different receipt of a later date for a less amount of grain, even when such debtor is the warehouseman.

3. NEW TRIAL—*Newly Discovered Evidence Must be Produced on Motion.* One who asks a new trial because of newly discovered evidence, consisting of a document in the possession of the adverse party, is required to produce such legal evidence as is available concerning its existence and contents. An affidavit thereof made upon information and belief, which states no probative facts within the knowledge of the affiant, is not sufficient, where no effort is shown to require a production of the document by its possessor.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed November 6, 1915. Affirmed.

*J. A. McDermott,* of Winfield, for the appellant.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield, for appellee The Cowley County National Bank.

The opinion of the court was delivered by

MASON, J.: The Cowley County National Bank held a number of warehouse receipts for grain, issued by the Rawlins-Dobbs Elevator Company, as collateral security for several notes. The receipts were deposited with the bank to secure notes of the person, firm or corporation to which they were respectively issued, in one instance that of the elevator company, in two that of Rawlins-Beverly & Company, and in two others that of John Rawlins, who appears to have had charge of the business of both these concerns. It developed that the company had not sufficient grain on hand to meet the receipts, and the bank brought an action against the company for the shortage, and against the Title Guaranty & Surety Company as surety upon the statutory bond given by the elevator company for the faithful performance of its duties as a public warehouseman. (Gen. Stat. 1909, § 3347.) The plaintiff recovered a judgment and the surety company appeals.

The court instructed the jury in effect that the plaintiff was entitled to recover the amount unpaid on the notes (not in excess of the bond) if it had proved that it held the receipts as security for a valid and subsisting indebtedness, and had made a demand for the grain. The surety company made no request for different instructions, but contends that other issues raised by its answer should have been submitted.

One of the receipts, signed, like all the rest, by the Rawlins-Dobbs Elevator Company, which was held as security for a note of that company, contained the following language, but no other relating to the ownership of the grain: "Received in storage from, Rawlins-Dobbs Eleva. Co. Fifty-five Hundred and Twenty-five bushels of wheat inspected, subject to the order hereon of The Rawlins-Dobbs Elevator Co." The surety company contends that this receipt was void because it was issued for goods owned by the warehouseman, without stating the fact of such ownership, in violation of the statute, which reads:

"Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms— . . . (h) if the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership." (Gen. Stat. 1909, § 3367.)

The purpose of this provision is thus stated by the Commissioners on Uniform State Laws: "As some abuses have arisen from warehousemen issuing receipts on their own goods, it seemed wise that when they issued negotiable receipts in this way, the documents should carry notice of the fact on its face." (American Uniform Commercial Acts, p. 187.) Where a warehouse receipt acknowledges the reception of goods from the warehouseman himself, and the holding of them subject to his order, the fact that he is the owner is stated by fair implication—the document carries on its face notice of his ownership, and the purpose of the statute is fully met.

The defendant pleaded that several of the receipts were not issued in good faith or for value, but were issued to take the place of earlier receipts for larger amounts of grain, at the request of the bank, when the original receipts began to appear old, the purpose being to cover up the transactions between the bank and the elevator company; that the new receipts were not given the same date as the old ones, as the law required: and that the indebtedness to the bank was not reduced when the change was made. The evidence shows that in two instances, at the suggestion of the bank, its creditor (in one case being the elevator company) delivered a new receipt (in one case two) bearing a later date, in exchange for the old, the new representing a less value, there being no corresponding reduction of the debt. The statute provides that:

"In cases where a part of the grain represented by the receipt is delivered out of the store and the remainder is left, a new receipt may be issued for such remainder, but the new receipt shall bear the same date as the original, and shall state on its face that it is balance of receipt of the original number; and the receipt upon which a part has been delivered shall be canceled in the same manner as if it had all been delivered." (Gen. Stat. 1909, § 3352.)

It is not necessary to determine the effect of a failure to comply with this provision, for it does not apply in the situation here presented. This case is not one where the holder of a receipt obtains a part of the grain for which it calls, and a new receipt for the remainder. Here the owner of a warehouse receipt, which he has deposited as collateral security for his note, by an arrangement with his creditor, substitutes for it another receipt, of a later date and for a smaller quantity of grain. The circumstance that in one instance the warehouse-

man happens to be the debtor does not change the character of the transaction. There was no implication that the grain represented by the later receipt was a part of that covered by the earlier one. In the instance where the bank surrendered an old receipt for wheat in exchange for two later ones, one of the latter was for corn. The fact that the bank consented to accept less security for greater without a reduction of its claim affords no ground of complaint by the surety company.

The answer alleged in substance that the wheat represented by two of the receipts on which the action was based had, with the consent of the bank, been converted into flour and sold, the proceeds being deposited in the bank and checked out in course of the depositor's business; that the bank knew that this grain was not in the elevator more than two years before this action was begun, and therefore that the statute of limitations had run. We find no evidence that the bank consented to the conversion of the wheat, or had any knowledge of it at the time, or any notice of it until about eighteen months before the action was brought, when Rawlins, according to his own testimony, told the cashier that the wheat had been milled. Therefore no occasion arose to submit these issues to the jury.

After the jury had been out for about a day they were brought into court and their foreman reported that they were unable to agree. Upon being questioned by the judge as to the character of their disagreement he said that the difference of opinion seemed to be in regard to whether the bank had knowledge that the grain was not back of the receipts. There was some discussion by counsel, and the court gave an additional instruction to the effect that this matter was not in issue. The defendant maintains that what was said by the plaintiff's attorney amounted to an argument on the merits, and that the additional instruction should not have been given. We think no prejudice resulted with respect to either of these matters.

The surety company asked leave to amend the answer to conform to the proof offered, by setting out that the grain represented by a part of the receipts had, with the knowledge and consent of the bank, been converted into money which was diverted to various uses (this much being essentially repetition), and that the other receipts were issued when there was no corresponding grain in the elevator, this being known to the

Bank v. Elevator Co.

bank when it accepted them. The request was refused. In this there was no error. It was within the discretion of the court to refuse to enlarge the issues at that time, but apart from that consideration we discover no substantial evidence supporting the new allegation.

Complaint is made of the overruling of a motion for a new trial on the ground of newly discovered evidence, principally in relation to a financial statement said to have been made to the bank in behalf of Rawlins, Rawlins-Beverly & Company, and the elevator company. The motion, which was verified on information and belief, set out in substance that at the time of the trial the surety company was unable to ascertain the fact that the bank when it accepted a part of the warehouse receipts knew the elevator company issued them without having any of the corresponding grain; that it afterwards discovered that by reason of the financial statement referred to the bank must have had this knowledge at that time, and must have known that the wheat represented by the other receipts had been milled. We can not regard this showing as sufficient to compel the granting of a new trial. The statute requires that where a new trial is asked on account of newly discovered evidence, "such evidence shall be produced at the hearing of the motion by affidavit, deposition or oral testimony of the witnesses." (Civ. Code, § 307.) The affidavit attached to the motion, not having been positively verified, was not evidence of the existence or contents of the document referred to. It recited that the statement was still in the possession of the bank, and that the surety company had been unable to procure a copy. No effort appears to have been made to require the production of the statement by subpœna or other statutory method, nor was any competent evidence produced of its existence, or of the information that had been obtained concerning it. The bank in its brief denies all knowledge of it. The statute contemplates that before such a motion is granted legal evidence must be produced sufficient to show that at a new trial a different result would probably be reached. We do not think that condition was met.

The judgment is affirmed.