[No. 18400. Department One. September 8, 1924.]

## W. T. LAUBE, *as Trustee in Bankruptcy etc., Appellant,* v. SEATTLE NATIONAL BANK, *Respondent.*[1]

WAREHOUSEMEN (2)—RECEIPTS—PLEDGES—CONTROL OR POSSESSION OF GOODS. A warehouse company may issue negotiable warehouse receipts for personal property left in the custody of a third person or its agent, although it did not physically store the same in its own warehouse, where the owner surrendered all physical control over the trucks until return of the receipts properly endorsed.

SAME (2)—RECEIPTS—VALIDITY—POSSESSION OF GOODS—EVIDENCE. That a warehouse company, holding possession of the property of an insolvent corporation, was so intimately related to the insolvent as to show that its possession of property stored with it was in substance the possession of the insolvent, so that it could not issue negotiable warehouse receipts for the property, is not sufficiently established by the evidence where it does not appear that it acted exclusively for the insolvent, or ever issued receipts for goods left in the possession of the insolvent, nor by evidence that the insolvent had acquired all the stock of the warehouse company.

SAME (2)—RECEIPTS—REQUISITES—LOCATION OF WAREHOUSE. The validity or negotiability of warehouse receipts is not affected by the fact that they did not describe the location of the warehouse where the goods were stored, as required by Rem. Comp. Stat., § 3588, prescribing the requisites of such receipts.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 24, 1923, upon findings in favor of the defendant, in an action by a trustee to recover property of a bankrupt, tried to the court. Affirmed.

*Loren Grinstead* and *Harry A. Rhodes,* for appellant.

*Bausman, Oldham & Eggerman,* for respondent.

PARKER, J.—The plaintiff, Laube, as trustee in bankruptcy of Frank Waterhouse & Company, seeks recovery from the defendant bank of ten Vulcan auto-

[1]Reported in 228 Pac. 594.

mobile trucks, or, in the alternative, recovery of their value, which he alleges to be $2,000 each. A trial upon the merits in the superior court for King county, sitting without a jury, resulted in findings and judgment denying recovery, from which the plaintiff has appealed to this court.

The principal controlling facts may be summarized as follows: On May 11, 1921, the Waterhouse company had made arrangements with respondent bank to borrow from it the sum of $23,394.59. The Waterhouse company then owned the ten trucks in question, which were then in the physical possession of the Vulcan Manufacturing Company at its plant in Seattle. Looking to the securing of the loan, the Waterhouse company caused to be issued to it by the Arlington Dock Company ten negotiable warehouse receipts, one for each truck, evidencing their storage with the dock company. It was agreed between the Waterhouse company and the dock company that the dock .company might let the trucks remain at the plant of the Vulcan Manufacturing Company under such arrangement as the dock company might make with the Vulcan company for their storage and care for the dock company. The Vulcan company was duly notified by both the Waterhouse and the dock companies of the issuance of the warehouse receipts and of this agreement between the Waterhouse company and the dock company, so that, whatever responsibility for the care of the trucks thereafter rested upon the Vulcan company, it was alone to the dock company. Then, by agreement between the dock company and the Vulcan company, the trucks were moved to the third floor of a concrete building at the plant of the Vulcan company, entirely apart from other goods and personal property, the dock company to have free access to the trucks; it be-

ing understood that, whatever physical possession of the trucks might be considered in the Vulcan company, that company in that respect was only acting as agent for the dock company.

The Waterhouse company executed and delivered to respondent two promissory notes to evidence the loan, one for $14,200 and one for $9,194.59, and also, as security therefor, assigned and delivered to respondent by proper endorsement thereon, the ten negotiable warehouse receipts issued to it by the dock company. The notes upon their face in terms pledged the warehouse receipts for the trucks as security, referring to them by number and to their issuance by the dock company; and also authorized respondent, in case of default in payment, to sell the security, or any part thereof, and apply the proceeds thereof to the payment of the notes. The leaving of the trucks in the building at the plant of the Vulcan company, as above noticed, was known to and acquiesced in by the bank. All of the foregoing facts constituted in effect but one transaction and occurred as nearly simultaneously as was practical under the circumstances. At that time the Waterhouse company was a solvent and going concern.

On January 13, 1922, C. P. Bissett was, by the Federal district court, appointed general receiver of the Waterhouse company because of its then insolvency. A few days later, Bissett was, by the Federal district court, in another action, appointed general receiver of the Vulcan company because of its then insolvency. It was manifestly by reason of this latter appointment and as such receiver that Bissett came into the possession of the trucks, to whatever extent the Vulcan company may be said to have been in possession of the trucks for the dock company which had issued the negotiable warehouse receipts for their storage. There-

after the trucks were taken possession of by the bank. This was by consent of Bissett as receiver of the Vulcan company. They were thereafter sold and the proceeds of the sale applied upon the amounts due upon the notes in pursuance of the pledging of them as security. All of this seems to have been done, also, by consent of Bissett as receiver of the Waterhouse company, but that we think is of no consequence, since Bissett never had possession of the trucks as such receiver, and respondent was within its rights in taking and selling the trucks, as we shall presently see.

In March, 1922, the Waterhouse company was formally adjudged bankrupt upon an involuntary petition therefor, and thereupon this appellant, Laube, became the duly qualified trustee in bankruptcy for the Waterhouse company, succeeding to the rights of Bissett as receiver for that company. Thereafter in October, 1922, this action was commenced by Laube as trustee in bankruptcy, and resulted in its disposition by the trial court as above noticed. Other facts will be noticed as may seem necessary in our discussion of the several contentions made by counsel.

It is contended in behalf of appellant that the claimed pledge of the trucks as security for the loan from the respondent to the Waterhouse company was ineffectual because of the want of the possession of the trucks passing from the Waterhouse company to the dock company; and that, therefore, respondent could not, under the assignments of the warehouse receipts, rightfully take possession of the trucks by virtue of its claim of pledge, as against the rights of appellant representing the creditors of the Waterhouse company. The argument seems to be that a warehouse concern cannot lawfully issue warehouse receipts evidencing storage of property with it unless it has

physically stored the property in its own warehouse. This, we think, is not unqualifiedly the law. If a warehouse concern has acquired the possession of the goods to the extent that the owner is excluded therefrom, it seems to us that neither the owner nor those claiming under him, even though the latter represent his creditors in insolvency or bankruptcy proceedings, can rightfully claim that the warehouse receipt was illegally issued merely because the goods were left in the custody of a third person by the warehouse concern as its agent. This record, it seems to us, renders it quite plain that the Waterhouse company surrendered all physical control over these trucks with no right to assume possession of any of them, except upon return of the warehouse receipt or receipts therefor properly endorsed, such being the express terms of the receipts.

In *Love v. Export Storage Co.,* 143 Fed. 1, the Federal circuit court of appeals for the sixth circuit had under consideration warehouse receipts issued for the storage of lumber left at the owner's yards, but set apart and identified as being in possession of the warehouse concern; the warehouse receipts being then assigned by proper endorsement and delivered to a bank as collateral security for a loan by it to the owner substantially as in this case. Holding that the possession of the warehouse concern was sufficient to support the validity of the warehouse receipts and the passing of symbolical possession of the lumber to the bank by the owner's assignment and delivery to it of the warehouse receipts, Judge Cochran, speaking for the court, said:

"Coming to the merits of the appeal, we find that it is urged on behalf of the appellant that the appellee bank acquired no right or lien upon the lumber by virtue of the warehouse proceedings and the pledge of the warehouse receipts, and that therefore he was

entitled to the full relief sought. It is so urged upon several grounds.    .    .    .    One of the grounds upon which the position stated is urged is that the lumber in question was not warehoused by those proceedings. Of course, an actual warehouse is not essential to the warehousing of goods. They may be warehoused upon a parcel of ground inclosed, or open, or partly so. And they may be warehoused upon what are the owner's premises at the time of the warehousing, and that, though they may then be on those premises and without changing their location thereon. The only thing essential to the warehousing of goods is that their possession be changed from that of their owner to that of the warehouseman."

That decision reviews and quotes from the decision of the supreme court of the United States in *Union Trust Co. v. Wilson*, 198 U. S. 530, where the same general principle is announced in support of a similar holding relating to warehouse receipts issued for property left upon the premises of its owner, though under such circumstances as to show passage of possession to the company issuing such warehouse receipts. The decision of this court in *Citizens Bank v. Willing*, 109 Wash. 464, 186 Pac. 1072, is cited and relied upon by counsel for appellant as more applicable to the situation here involved. A critical reading of that decision, however, we think will show that it is not controlling in our present inquiry. In that case the Red Cedar Company was loaned considerable sums of money by the bank, and in order to secure the loans, the officers of the company organized a warehouse company in name. As the lumber was manufactured, it was placed in a room or shed on the premises of the company and a negotiable warehouse receipt was issued in the name of the warehouse company and deposited with the bank, we assume by proper assignment, as collateral security

for the loans. Holding that, the manifest purpose of the organization and maintenance of the warehouse company to confine its business to the warehousing of the products of the cedar company at the plant of the cedar company, under the circumstances, had the effect of the product always remaining under the control and dominion of the cedar company, and therefore rendered the warehouse receipts void, we said:

"The respondent [bank] not being able to prevail upon the draft, the next question is whether it can recover as owner. If it is in the position of owner, it must be by virtue of the warehouse receipt issued by the Fidalgo Warehouse Company, which is denominated on its face as negotiable. This presents the question whether the Fidalgo Warehouse Company was a 'warehouseman' within the contemplation of the uniform warehouse receipts act (Rem. Code, §§ 3369-1 to 3369-61). Section 1 of this act provides that 'warehouse receipts may be issued by any warehouseman, and must be issued in manner and form as provided by this act.' In § 3369-58, 'warehouseman' is defined to mean 'a person lawfully engaged in the business of storing goods for profit.' In this case the Fidalgo Warehouse Company had no separate building of its own; it did not store goods for the public generally or at all; it only stored the product of the Red Cedar Company in a room or shed upon the premises of that company. It was simply a device by which the bank was furnished negotiable warehouse receipts as collateral security for the loans which it had made to the Red Cedar Company."

That is not this case. Here, as we view this record, it is shown that the trucks, upon the issuing of the warehouse receipts, passed out of the possession and control of the Waterhouse company, their owner, and into the possession of the dock company which issued the warehouse receipts, though that company may have in some measure entrusted the Vulcan company with

the care of the trucks as its agent.    The trucks were
not left upon any part of the premises of the Water-
house company.

It is further contended in this connection that the
evidence in this case shows that the dock company was
so intimately related to the Waterhouse company that
its possession of the trucks under the warehouse re-
ceipts was in substance the possession of the Water-
house company.    The dock company was organized as
a corporation in 1903.    Among its enumerated powers
in its articles of incorporation we find this:   "To
acquire    .    .    .    warehouses and operate the
same for public hire."    It has, to at least some extent,
carried on a warehouse business, received goods in
storage and issued warehouse receipts therefor.    The
evidence does not suggest that it did this exclusively
for the Waterhouse company, as in the case of *Citizens
Bank v. Willing*, above noticed; nor does the evidence
suggest that the dock company ever warehoused goods
of the Waterhouse company and issued its warehouse
receipt therefor, leaving the goods in any sense in the
possession of the Waterhouse company.    These ware-
house receipts are numbered consecutively from 554
to 563, inclusive, suggesting the issuance of a large
number of such receipts consecutively numbered as
required by subd. c, § 3588, Rem. Comp. Stat. [P. C.
§ 7142], prescribing the terms in which warehouse re-
ceipts shall be issued.    There is some testimony, but
practically wholly of a negative character, that is, of
witnesses who did not positively know, indicating that
the dock company's warehouse business had been
abandoned at the time of the issuing of these ware-
house receipts.    But such testimony, we think, is not
worthy of serious consideration.    There is some testi-
mony tending to show that the Waterhouse company,
sometime prior to the issuing of these warehouse re-

ceipts, had become the owner of practically all of the stock of the dock company; but that we think does not warrant the conclusion that its legal corporate entity had been absorbed in the corporate entity of the Waterhouse company, nor that it existed solely for the purpose of warehousing the goods of the Waterhouse company, nor that the possession of the dock company was in effect the possession of the Waterhouse company. These considerations, it seems to us, make a situation quite different from that existing in *Citizens Bank v. Willing,* above noticed.

It is further contended that the warehouse receipts show their invalidity upon their face, especially in failing to state the location of the warehouse where the trucks were stored, and therefore failing to comply with § 3588, Rem. Comp. Stat. [P. C. § 7142], being § 2 of our warehouse receipts act, which act, we note, is the uniform warehouse receipts act as it exists in many states. That section, in so far as it has any application to our present inquiry, reads as follows:

"Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms:

"(a) The location of the warehouse where the goods are stored.

"(b) The date of issue of the receipt.

"(c) The consecutive number of the receipt.

"(d) A statement whether the goods received will be delivered to the bearer, to a specified person or to a specified person or his order.

"(e) The rate of storage charges.

"(f) A description of the goods    .    .    .

"(g) The signature of the warehouseman, which may be made by his authorized agent.    .    .    .

"A warehouseman shall be liable to any person injured thereby, for all damage caused by the omission

from a negotiable receipt of any of the terms herein required.'' Laws of 1913, p. 279, § 2.

The validity of a warehouse receipt issued under the statute of Illinois, it being the uniform warehouse receipts act containing the exact provisions of our act above quoted, was drawn in question in *Manufacturers' Mercantile Co. v. Monarch Refrigerating Co.,* 266 Ill. 584, 107 N. E. 885. It was there contended that a warehouse receipt which failed, among other things, to embody some of the terms as prescribed in the portions of the act above quoted was invalid and nonnegotiable, conferring no rights upon the one to whom it was issued or to the one to whom it was transferred. Holding that these omissions did not affect the validity of the receipt nor its negotiability, nor the rights of the one to whom it was issued or transferred, Justice Dunn, speaking for the court, observed:

''The requirements of section 2 were imposed for the benefit of the holder of the receipt and of the purchasers from him. It was not intended that a failure to observe them should render the receipt void in the hands of the holder. The appellee contends that such failure had the effect to render the receipts non-negotiable. Section 2 does not deal with the negotiability of warehouse receipts. After providing that no particular form shall be necessary for warehouse receipts, it prescribed certain terms to be embodied in them for the protection of the depositor or his assigns, and that it was for the protection of such persons that these terms were required is indicated by the provision that their omission from a negotiable receipt should render the warehouseman liable for all damages to any person injured thereby. This provision is inconsistent with the claim that the omission renders the receipt nonnegotiable, for it refers expressly to the omission from a negotiable receipt and not from a receipt which would otherwise be negotiable. The distinction between negotiable and non-negotiable receipts is stated in sec-

tions 4 and 5. A receipt which states that the goods will be delivered to the depositor or another specified person is non-negotiable; one which states that they will be delivered to the bearer or to the order of a person named in the receipt is negotiable. These receipts came within the definition of the last class and were negotiable.''

In this connection counsel for appellant cites and places some reliance upon our decision in *Hastings v. Lincoln Trust Co.,* 115 Wash. 492, 197 Pac. 627, 18 A. L. R. 583. A critical reading of that decision, however, will disclose that, so far as it has any bearing upon the law of warehouse receipts, it relates only to the question of whether or not the receipt in question was so effectually transferred from its original holder to the Lincoln Trust Company as to carry with such transfer constructive delivery of the warehoused property. There is in this case no uncertainty as to the sufficiency of the transfer of the warehouse receipts from the Waterhouse company to respondent to carry effectual, constructive delivery of the trucks to respondent, if the receipts be valid warehouse receipts, which we think they were.

Some suggestion is made by counsel for appellant, though seemingly not seriously argued, that respondent should, in any event, be required to account for monies received by it from the sale of the trucks made in accordance with the terms of its pledge. It is not claimed that the sale was unfairly made; neither is it claimed that the amount received by the bank for the sale of the trucks was equal to the amount due upon the indebtedness evidenced by the notes. Indeed, so far as this record discloses, it seems plain that the value of the trucks and the amounts received by respondent upon their sales were materially less than

the amounts due upon the note. So manifestly there is no surplus for respondent to account for. However, there seems to have been no serious effort to bring this question before the trial court in this case. If the bank has or should file in the bankruptcy proceedings any claim for a balance due upon these notes, the question might there arise as to how much it would be chargeable with from the sale of the trucks. The disposition of this case will, of course, not be *res judicata* as to any such question as may arise in the bankruptcy proceedings. The only question here that we are called upon to decide, or which the lower court was called upon to decide, is as to whether or not the bank rightfully obtained possession of these trucks by having acquired such possession symbolically through the endorsement and delivery to it of the warehouse receipts. We think respondent did so rightfully acquire such possession of the trucks and has never become liable to surrender them, or any excess proceeds of the sale of them, to the Waterhouse company or the trustee in bankruptcy now standing in the shoes of that company. There are other questions which we might be called upon to decide had our conclusion been that appellant had some right of recovery as against respondent, but in view of our conclusions above set forth, we are not now called upon to notice any such questions.

The Bank for Savings in Seattle was made a defendant with the Seattle National Bank in this case because of the fact that the Seattle National Bank had transferred one of these notes to the Bank for Savings and with it the warehouse receipts given as security for that note. We have referred to the Seattle National Bank as though it were the only defendant and respondent merely for convenience of expression. Of course, the Bank for Savings shares in the victory of

the Seattle National Bank by our decision, both being absolved from all liability to appellant.

The judgment of the trial court is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.