UNITED STATES of America,
Plaintiff,

v.

MERCHANTS MUTUAL BONDING
COMPANY, a Corporation,
Defendant,

v.

R. L. MADISON, and Helen M. Vust,
Third-Party Defendants,

and

Benson-Quinn Company, Lee Smith, et al.,
Interpleaded Defendants.

Civ. No. 1201.

United States District Court
N. D. Iowa, W. D.

June 10, 1965.

See also, D.C., 220 F.Supp. 163.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for plaintiff.

Marvin J. Klass, Sioux City, Iowa, for defendant.

Nelson & Stienstra, Sioux City, Iowa, for third-party defendants.

Paul A. Mahr, Paul J. Yaneff, U. A. Morgan, Charles M. Gasser, Sioux City, Iowa, Creasy & Metcalf, Kingsley, Iowa, for interpleaded defendants.

HANSON, District Judge.

This is the final ruling in this cause determining the validity of the claims as against the bond executed by Merchants Mutual Bonding Company and

the priority of the claims against the bond.

The claims of John Moon, Eugene Baker, Dale Powell, Ronald Randolph, Wayne Smith, Lloyd Stines, Roy Walker and Lee Smith (to the extent of the amount of grain stored at the price as of the time of the conversion and except for his claim for costs and judgment against the United States) are admitted by all parties.

The court finds that the claims of these parties are: John Moon—$1,474.88; Eugene Baker—$164.55; Dale Powell—$967.29; Ronald Randolph—$401.79; Wayne Smith—$189.57; Lloyd Stines—$317.00; Roy Walker—$421.14; and Lee Smith—$3,926.43. The claim of Lee Smith for costs and for judgment against the United States will be considered later in this ruling.

The amount of the claim of the United States is not disputed except possibly by Lee Smith. The validity of the claim of the United States has been explained in prior rulings. The court adheres to that position.

*Government Corn:*

Between April 4, 1960 and May 11, 1960, Commodity Credit Corporation surrendered to Correctionville Elevator and Mill warehouse receipts representing 213,616.36 bu. of corn together with shipping instructions and loading orders.

In loading order No. 11319553, warehouse receipts representing 66,763.45 bu. of corn were surrendered for which no corn was shipped to satisfy these receipts.

In loading order No. 11319551, warehouse receipts representing 4,425.57 bu. of corn were surrendered and no corn was shipped to satisfy these receipts. (These receipts were numbered 91, 213, and 215 and represented 1,653.57 bu., 1,285.21 bu. and 1,486.79 bu. respectively.) Also, in loading order No. 11319551, warehouse receipt No. 221 was surrendered and was only partially filled leaving 212.98 bu. of corn not shipped as required by that warehouse receipt. Also, in loading order No. 11319551, there was a shortage of 107.20 bu. of corn. The warehouse receipts for which this corn was shipped out had a net shortage of this amount.

In loading order No. 11319552, warehouse receipts representing 70,746.12 bu. of corn were surrendered and only 69,676.07 bu. of corn were shipped leaving a shortage of 1,070.04 bu. of corn less 14.73 bu. or a total of 1,055.31 bu.

The total of corn not redelivered is:

|  | |
|---|---|
| 66,763.45 bu. | |
| 1,653.57 | " |
| 1,285.21 | " |
| 1,486.79 | " |
| 212.98 | " |
| 1,070.04 | " |
| 107.20 | " |
| 72,579.24 | " |
| less 14.73 | " |
| 72,564.51 | " |

The quality of the corn described by the warehouse receipts appears on the loading orders. The quality redelivered is shown by the official inspection certificates. The dollar difference in the quality is $2,786.08. (This is based on settlement statements computed by Commodity Credit Corporation in accordance with the terms of the Grain Storage Contracts.) The 107.20 bu. shortage less the 14.73 bu. overage already referred to left a dollar loss of $83.21 according to the settlement statements.

*Government Soybeans:*

The Commodity Credit Corporation surrendered warehouse receipts for 2,699.74 bu. of soybeans and no soybeans were shipped. The value of these soybeans has been computed on the May 1960 price of $1.945 per bu. The Government surrenders its claim of $101.20 unearned warehousing charges paid by Commodity Credit Corporation to Vust. Total loss on soybeans is therefore $5,250.99.

*Government Grain Sorghums:*

The United States in April 1960 surrendered warehouse receipts on 6,336.29 cwt. of grain sorghums. The United States produced a computation deemed

admitted which shows that the United States lost $476.52 by reason of a quantity loss of sorghums and $333.14 by reason of a quality loss on the sorghums. This gives a total loss by reason of converted sorghums of $809.16.

The 107.20 bu. of corn less 14.73 bu. is considered separate from the remaining 72,472.04 bu. of corn shortage. The 72,472.04 bu. is valued at $1.095 per bu., the May 1960 price. This is the price of No. 2 yellow corn. Some of the corn converted was not of this quality. In arriving at a value of $79,377.18 for the 72,-472.04 bu., it has been taken into consideration that some of the corn converted was not of No. 2 yellow quality.

The Government in summary is claiming:

$79,377.18 for the 72,472.04 bu.
    83.21 for the 107.20 bu. less 14.73 bu.
 2,786.08 for discrepancy in value.
$82,246.47 Total.

The Government claims and supports by affidavits of S. J. Norin that Vust was paid $7,372.47 for warehousing services in and about corn that he converted to his own use. That brings the Government's total claim to:

$82,246.47
  7,372.47
$89,618.94 Total for corn.

Adding the total claims of the Government for corn, soybeans and sorghums, the court finds the claims of the United States to be:

$89,618.94 for corn
 5,250.99 for soybeans
   809.16 for sorghums

Benson-Quinn claims that their loss was 8,877 bu. of beans. This fact is uncontroverted. However, the United States and Lee Smith contest the validity of the claim.

In November 1959, Benson-Quinn purchased 75,000 bu. of soybeans from Martin Vust and paid for them. The beans were not to be immediately delivered to Benson-Quinn, and thus four warehouse receipts numbered 244, 245, 246, and 247 (18,000 bu. each) were given by Vust to Benson-Quinn.

By the middle of January 1960, receipts numbered 244, 245 and 246 were sent to Vust and cancelled. Receipt No. 247 for 18,000 bu. of grain remained. Beans were then shipped against receipt No. 247 until approximately 10,000 bu. of beans remained to be shipped. In order to make the books accurate, Benson-Quinn and Vust reduced the receipt to one for 10,000 bu. (the approximate actual amount of beans remaining to be shipped). Receipt No. 247 was cancelled and a new receipt for 10,000 bu., No. 248, was executed. Receipt No. 248 was not dated as of its actual execution. However, witnesses of both the United States and Benson-Quinn testified that this back-dating was a regular custom in the grain business although not always done. On the basis of that testimony, the court can find nothing wrong with the back-dating. For these purposes, it is the same as if the receipt No. 248 had actually been in existence since November 1959.

There was no evidence of any fraud on the part of Benson-Quinn. No elements of fraud were proven. There is no evidence that Benson-Quinn ever had any knowledge or reason to believe that Vust intended to mislead Government inspectors. The court finds that receipt No. 247 was actually in Minneapolis at the time the Government inspector thought Vust showed it to him at Correctionville.

The fact that this was an in store purchase does not by itself deny the holder of the receipt, Benson-Quinn, of the right to claim against the warehouseman's bond. 56 Am.Jur. Warehouse, Section 124; State to Use of Hart-Parr Co. v. Robb-Lawrence Co., 17 N.D. 257, 115 N.W. 846; Maryland Casualty Co. v. Washington Loan & Bkg. Co., 167 Ga. 365, 145 S.E. 761; 61 A.L.R. 323.

In this case, Benson-Quinn took the warehouse receipts in good faith believing that there was sufficient grain in the

warehouse to cover the four receipts. There is no evidence that Benson-Quinn believed and should have believed anything to the contrary at the time the last 18,000 bu. receipt was reduced to 10,000 bu. Although there was some suspicion that there was a shortage of grain in November at the time Benson-Quinn took the receipts, there is not sufficient evidence for the court to actually find there was such a shortage. It is not clear just what business Vust transacted between November and the middle of January.

The Government contends that even though Benson-Quinn could in the ordinary situation recover on the bond, they cannot recover in this case where other innocent parties would be involved. In that way, the Government distinguishes the Maryland Casualty case. The United States cites only two cases. However, the court is reconsidering the authorities cited in the Government's motion for summary judgment. Neither of them are any support for this proposition in the present case.

In Central States Corp. v. Luther, 215 F.2d 38 (10th Cir.), the warehouse receipts were invalid because they were not registered. Also in Luther, the warehouse receipts were taken when the holder knew the grain was not in the warehouse. Actually, that case turned on the fact that the funds paid to the warehouseman could not be traced to the grain in the warehouse. Sexton v. Graham, 53 Iowa 181, 4 N.W. 1090, might be some help to Lee Smith had he sued Benson-Quinn. It is no help to the Government. Clearly, the Government does not contend that they were not paid for such of their grain as was purchased by Benson-Quinn. Although there is some suspicion to the contrary, the Court cannot find that Vust actually sold Smith's beans to Benson-Quinn. The Government did not cite Central Nat. Bank of Mattoon v. Fidelity & Deposit Co., 324 F.2d 830 (7th Cir.), but likewise that case is not helpful here. It turned on the narrow ground that the receipts were illegal because they did not state on their face that the grain

was in the bins at the time the warehouse receipts were issued and that it was stored in a separate bin. In the present case as previously stated, Benson-Quinn believed there was sufficient grain in the warehouse belonging to Vust to cover the receipts issued. The court cannot find that in fact in November 1959 such grain was not present in the warehouse. That distinguishes the Central Nat. Bank case. In this regard, see also Woldson v. Davenport Mill & Elevator Co., 169 Wash. 298, 13 P.2d 478; Cowley County Nat. Bank v. Rawlins-Dobbs Elevator Co., 96 Kan. 461, 152 P. 647.

█ The United States and Lee Smith have failed in every manner and in every material respect to prove that the Benson-Quinn claim is not valid under any rule of law that either party has contended for in this cause. Accordingly, the court finds that the Benson-Quinn claim has been proven to be valid in the amount of $17,262.76.

█ The impleaded parties are not entitled to costs where the aggregate of the claims exceeds the amount of the fund. Tejas Development Co. v. McGough Bros., 5 Cir., 167 F.2d 268. The law does not allow costs against the United States in this type of situation. This is so by reason of Section 2412, Title 28, U.S.C.A. Additionally, the court in interpleader cannot give a judgment for one claimant against another claimant to the fund. Franklin Life Insurance Co. v. Falkingham, 7 Cir., 229 F.2d 300. Therefore, the claim of Lee Smith for costs against the United States must be denied.

█ In this type of situation, the property converted is such that it has a fluctuating value. The price to be used is the highest price between the time of the conversion and the time of the bringing of the action or claim. Doyle v. Burns, 123 Iowa 488, 99 N.W. 195, 202; Ontario Livestock Commission Co. v. Flynn, 126 N.W.2d 362 (Iowa); 89 C.J.S. Trover & Conversion § 168, p. 645. Therefore, the May 1960 prices would apply and the price Lee Smith contends for would not apply because that price

did not prevail in this area until after the time his claim was filed.

Lee Smith contends that both the Government and Benson-Quinn were negligent. Even if this be true, there is no reason to deny their recovery on the bond. However, the Court finds that there is insufficient evidence to show all the elements of negligence.

The total amount of the bond aggregates $58,000.00. The court concludes that all the parties whose claims have been herein adjudged valid shall share in the bond pro rata.

Accordingly, judgment will be entered against Merchants Mutual Bonding Company and in favor of United States of America in the amount of $45,927.00, in favor of Benson-Quinn Company in the amount of $8,288.00, in favor of John Moon in the amount of $708.00, in favor of Eugene Baker in the amount of $82.00, in favor of Dale Powell in the amount of $466.00, in favor of Ronald Randolph in the amount of $194.00, in favor of Wayne Smith in the amount of $92.00, in favor of Lloyd Stines in the amount of $154.00, in favor of Roy Walker in the amount of $203.00, and in favor of Lee Smith in the amount of $1,886.00.