738 P.2d 1129

**CONTINENTAL BANK, an Arizona corporation, Plaintiff/Appellant,**

v.

**GUARANTY WAREHOUSE CORPORATION, an Arizona corporation, Defendant/Appellee.**

**No. 2 CA-CV 5881.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 5, 1987.

Review Denied June 16, 1987.

Murphy & Posner by K. Bellamy Brown, Richard H. Lee and Gary N. Pederson, Phoenix, for plaintiff/appellant.

Jennings, Kepner & Haug by Craig R. Kepner and Steven S. Guy, Phoenix, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

Continental Bank appeals from the entry of summary judgment in favor of Guaranty Warehouse Corporation in Continental's suit for the loss of the collateral which secured a loan it had made to a third party. The bank contends that issues of fact exist which precluded entry of summary judgment. We agree and reverse.

In May 1983 Continental extended an $850,000 line of credit to Phoenix Distributing Company, Inc., a wholesale distributor of beer, wine, soft drinks and distilled liquor. The maturity date of the loan was November 11, 1983. The bank initially refused the loan but subsequently agreed to it on condition that it be secured by Phoenix Distributing's inventory and that the inventory be controlled by a warehouseman. Phoenix Distributing then entered into a field warehousing agreement with Guaranty Warehouse Corporation under which Guaranty issued non-negotiable warehouse receipts to the bank which stated the value of the inventory held under the arrangement. The bank issued delivery instructions which authorized Guaranty to release inventory to Phoenix Distributing only if the remaining liquor held under the warehouse receipt exceeded $1,250,000.

Guaranty issued receipts weekly through October 1983. Each indicated that the minimum hold requirement was $1,250,000. On November 8, 1983, Guaranty issued a receipt which, for the first time, did not mention a minimum hold requirement. The bank did not receive the receipt until November 11, 1983. The value of the inventory shown on the receipt was only $489,-709.24. In mid-October Continental had discovered that G. Heileman Brewing Company had a prior security interest in part of the inventory, since Phoenix Distributing was purchasing Heileman merchandise on credit. When Guaranty learned there was a prior security interest, it informed the bank it would no longer issue receipts covering any Heileman inventory. Attached to the November 8, 1983, warehouse receipt was an inventory certification form which listed the Heileman inventory under

Guaranty's control. It was undisputed that Heileman did not make a demand upon Guaranty for that inventory. On November 11, the bank delivered instructions to Guaranty requiring it to maintain a minimum of $627,000 in non-Heileman inventory.

On November 10 the bank discovered that Guaranty had issued receipts for goods that were not in its possession but that were believed to be in transit from the manufacturer. As a result of that discovery, the bank demanded an itemization of the liquor actually in Guaranty's possession. On November 14, 1983, Guaranty issued a receipt that, for the first time, indicated the portion of the inventory that was "in transit." The total non-Heileman inventory listed as being in Guaranty's actual possession was $266,202.54. That receipt was received by the bank on November 15. Also on November 16, the bank delivered instructions to Guaranty prohibiting it from releasing any non-Heileman inventory without the bank's prior consent. On November 17 Guaranty issued a receipt which showed a total of $242,825.38 non-Heileman inventory in Guaranty's possession. The bank did not receive that receipt until November 25.

On November 18 both Guaranty and the bank learned that Phoenix Distributing had filed for Chapter 11 bankruptcy reorganization. That same day Guaranty released the remainder of its inventory to Phoenix Distributing pursuant to an order from the bankruptcy court.

The warehouse receipts issued by Guaranty indicated that it had "[r]eceived [the inventory] from Phoenix Distributing Company, Inc. for storage in warehouse No. 281 located at 33 South 28th Street, Phoenix, Arizona for the account of and to be delivered on written order of Continental Bank, Phoenix, Arizona...." Each receipt also contained the following language: "This Warehouse Receipt is issued in lieu of and supercedes [sic] and cancels Warehouse Receipt No. ____ dated _____, 1983 [indicating the number and date of the previous receipt]."

The bank filed suit in December 1983 and an amended complaint in January 1984. Guaranty Warehouse filed a motion for summary judgment in March 1985 which was granted in June. The bank's motion to reconsider and motion for new trial were denied in October 1985. The trial court granted the summary judgment motion with regard to the causes of action for failure to deliver goods, wrongful delivery of goods and conversion on the grounds that the bank never made a proper demand for the goods and because Guaranty Warehouse had asserted the legal excuse of mutual mistake of material fact, in that both parties believed that the bank had a superior security interest in all the inventory. In addition, the court found that Guaranty was entitled to summary judgment on the defense of lawful excuse for nondelivery of goods in its delivery of the inventory to Phoenix Distributing pursuant to the bankruptcy court order.

The court also granted summary judgment on the bank's causes of action for nonreceipt/overissue, omission of essential term, breach of duty of care, negligent misrepresentation, misrepresentation and concealment, consumer fraud and accounting on the ground that the express terms of each warehouse receipt provided that it superseded and cancelled the prior receipt and on the ground that by November 11, 1983, the bank was aware of the exact status and location of goods, whether they were in the warehouse or in transit, which the court found constituted compliance with A.R.S. § 47–7203. Finally, the court also found that summary judgment was proper on the claims for omission of essential term and breach of duty of care because the bank had never made a demand for the inventory and because there was no showing that the bank lost inventory because of the issuance of receipts covering goods in transit.

**LACK OF DEMAND FOR DELIVERY**

■ Appellant contends it was improper for the court to grant summary judgment on the basis that the bank failed to make a demand for delivery of the inventory, insisting that the proper demand require-

ment is only the general rule and that many cases hold that demand is excused if the making of a demand would have been a useless act. The court relied on 78 Am. Jur.2d *Warehouses* § 213 (1975), 93 C.J.S. *Warehousemen & Safe Depositaries* §§ 51, 72 (1956) and *Hartford Accident & Indemnity Co. v. State of Kansas ex rel. Fatzer,* 247 F.2d 315 (10th Cir.1957). As the cited section in American Jurisprudence indicates, *"Ordinarily,* the making of a proper demand is a condition precedent to the obligation of the warehouseman to deliver the stored goods." § 213 at 322 (emphasis added). The section also contains the following:

> However, a demand upon a warehouseman by a person entitled to the stored goods is not a requisite to the liability of the former where the warehouseman has placed it out of his power to comply with such demand, since a vain and useless act is not required of the depositor or receipt holder.

§ 213 at 323. The Tenth Circuit in *Hartford Accident & Indemnity* merely repeated the American Jurisprudence statement of the general rule in its opinion.

As appellant has pointed out, there are a number of cases in which an action for conversion or non-delivery is permitted despite the fact that the warehouseman has not received a proper demand for the stored goods. See, e.g., *Schmidt v. Cowen Transfer & Storage Co.,* 170 Colo. 550, 463 P.2d 445 (1970) (advertisements for sale of goods for unpaid storage charges appeared prior to date shown on the notice to storer); *Avoca State Bank v. Merchants Mutual Bonding Co.,* 251 N.W.2d 533 (Iowa 1977) (no grain existed to fulfill warehouse receipts pledged to bank at time elevator operator's business failed); *Walker Bank & Trust Co. v. New York Terminal Warehouse Co.,* 10 Utah 2d 210, 350 P.2d 626 (1960) (warehouseman previously delivered goods stored under credit arrangement to persons other than the bank); *Woldson v. Davenport Mill & Elevator Co.,* 169 Wash. 298, 13 P.2d 478 (1932).

Since the evidence shows that Continental Bank did not know the exact value of the Heileman inventory in Guaranty's possession until November 11, nor did it know the value of the non-Heileman inventory actually in Guaranty's possession rather than in transit until November 15, we find that a material issue of fact exists as to whether or not Continental was excused from making a proper demand for the inventory prior to suing for conversion, failure to deliver and wrongful delivery. We note that, although the trial court's minute entry indicates that the bank knew by November 11 the exact status and location of the inventory, the undisputed evidence was that the bank did not know the value of the inventory in transit until November 15. Additionally, there is no indication in the warehouse receipts in the record that Guaranty ever informed the bank of the exact location of goods in transit.

## MUTUAL MISTAKE OF FACT

■ The bank contends it was also error for the trial court to grant summary judgment on the causes of action for failure to deliver goods, wrongful delivery of goods and conversion on the ground that Guaranty "is entitled, pursuant to [A.R.S. §] 47–7403(A)(6), to assert the personal defense of mutual mistake of material fact and avoid liability for any non-delivery of the secured Heileman goods covered by the various warehouse receipts." The trial court found that the risk of loss from that mistake was on the bank because the bank had failed to find the prior Heileman lien when it checked Phoenix Distributing's credit.

The problem with that finding, however, is that the defense of mutual mistake applies only to the parties to the contract. Restatement (Second) of Contracts § 152 (1979). In this case, there are two separate contractual relationships: one was between Phoenix Distributing and Guaranty Warehouse and was represented by the field warehousing agreement, in which Phoenix Distributing agreed not to present any goods for storage unless they were free of lien; and the second was between Guaranty and the bank and was represented by the warehouse receipts and the delivery instructions, neither of which referred to

prior liens. Although it is undisputed that both Guaranty and the bank believed until late October 1983 that no prior liens existed on the inventory in storage, that belief by both parties does not give rise to the defense of mutual mistake with regard to the contracting documents between them, which contain no provision regarding the existence or effect of prior liens on inventory covered by the documents.

Furthermore, any mutual mistake concerning prior liens would not have related to a material term of the agreement between the bank and Guaranty. Under the warehouse receipt, Guaranty did not guarantee title to the goods in its possession, A.R.S. § 47–7503(A); *First National Bank of Fleming v. Petzoldt*, 262 F.2d 540 (10th Cir.1958); its only duty was to possess the goods and to release them pursuant to delivery instructions. Even if Heileman had demanded the goods on which it possessed a lien, Guaranty would not have been liable to the bank because of the existence of the prior lien. Pursuant to A.R.S. § 47–7603, Guaranty could have filed an interpleader action if it had been presented with conflicting claims to the goods.

We find it was error for the trial court to grant summary judgment on the ground of mutual mistake.

## CONSTRUCTION OF WAREHOUSE RECEIPT

The trial court granted summary judgment on appellant's remaining causes of action primarily because it determined that the language in each warehouse receipt, stating that it superseded and cancelled the prior receipt, precluded appellant from suing for any error or misrepresentation in any previously-issued receipt. The court's minute entry states: "The Plaintiff received numerous receipts from Defendant without objection and clearly understood and agreed that the Defendant bailee's obligation to deliver goods covered by the warehouse receipt was defined by the express terms of the most recent warehouse receipt." That holding, however, would permit a warehouseman to avoid all liability for fraud or other wrongdoing simply by

issuing a subsequent receipt. As noted by appellant, if Guaranty intended "acceptance" of the receipts to operate as either a waiver or a release of liability, clear language to that effect is required.

■ "The interpretation of an instrument is a question of law to be determined by this court independently of the trial court's determination." *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co.*, 143 Ariz. 527, 533, 694 P.2d 815, 821 (App.1984). If the language in an agreement can reasonably be construed in more than one way, the agreement is ambiguous and parol evidence may be admitted to determine the meaning of the language. *Associated Students of University of Arizona v. Arizona Board of Regents*, 120 Ariz. 100, 584 P.2d 564 (App.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1226, 59 L.Ed.2d 462 (1979); see also *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984).

■ The meaning of language placed by Guaranty on the warehouse receipts issued pursuant to its agreement with Phoenix Distributing is not as clear as the trial court determined. Nor are the facts undisputed as to the trial court's statement that the bank "received numerous receipts from Defendant without objection." Since the evidence presented by the bank with regard to its understanding of the language was that each receipt represented the inventory in the warehouse on a particular day and that inventory would obviously change from day to day, the bank contends there was no "acceptance" of the receipts which would have the effect of releasing Guaranty from liability on the previously-issued receipt. We find that the "supersedes and cancels" language in the receipts is ambiguous. Hence, Continental Bank raised an issue of material fact which precluded summary judgment on its remaining causes of action.

Having determined that disputed factual issues exist with regard to each cause of action alleged by Continental, we need not

discuss the bank's contentions that additional factual issues exist.

Reversed and remanded.

HATHAWAY, C.J., and HOWARD, P.J., concur.