## OPENSHAW v. OPENSHAW.

No. 5232. Decided June 21, 1932. [12 P. (2d) 364.]

*Hurd & Hurd,* of Salt Lake City, for appellant.

*Willard Hanson, A. H. Hougaard,* and *L. R. Rogers,* all of Salt Lake City, for respondent.

DILWORTH WOOLLEY, District Judge.

In this case the plaintiff and respondent sued the defendant and appellant for a decree of divorce and other relief. The trial court granted her an interlocutory decree; awarded her the custody of the two minor children of the parties; set apart to her a portion of the husband's property; ordered him to pay her $175 per month for the support of herself and the children; directed him to pay to her attorney $400 for his fee; and awarded costs to the plaintiff.

From all of the decree, except that part of it which dissolves the bonds of matrimony and awards the custody of the two minor children to the plaintiff, the defendant has appealed. He is dissatisfied with the decree with respect to the costs, the attorney's fees, and the division of the property and the alimony.

As to the costs, it appears that after the trial the plaintiff filed a cost bill claiming $29.60. But the bill was filed out of time, so the defendant moved to strike it on that ground. The motion was argued by counsel and submitted to the court for its decision thereon; but for some reason which does not appear the court failed or neglected to rule upon it. The failure of the trial court to rule upon the motion is assigned as error. There is no particular time prescribed by law within which such a motion must be decided by the trial court. About all that can be said about the matter is that the trial court ought to rule upon such a motion within a reasonable time, or before the judgment for costs is sought to be enforced against the losing party. We cannot say or hold in this case that it was error for the trial court to fail to rule upon the motion between the time when it was submitted, which

was April 21, and the time when this appeal was taken, which was August 15, 1931. But the motion should have been granted and the amount claimed by plaintiff in her cost bill should have been stricken from the judgment, because the cost bill was not filed within the time required by law. Comp. Laws 1917, § 7047. The right to costs is purely a statutory right. A litigant claiming his costs and to whom the trial court has awarded costs, in order to recover the same from the adverse party, must file his cost bill within the time prescribed by the statute. *Houghton et al.* v. *Barton,* 49 Utah 611, 165 P. 471; *Checketts* v. *Collings* (Utah) 1 P. (2d) 950, 75 A. L. R. 1393. This the plaintiff did not do. Since the cost bill was not filed in time, the inclusion in the judgment of the amount claimed in the bill renders the judgment to that extent contrary to law. It should be amended by striking out the costs.

As to the attorney's fees, it appears that prior to the trial the defendant, under the order of the court, had paid to his wife or to her attorney, on account of his fees, the sum of $100. Then at the conclusion of the trial the court, being of opinion that $500 was a reasonable amount to be paid to plaintiff's attorney for his services in the case, and that defendant ought to pay it because plaintiff could not, in the decree ordered and directed defendant to pay to plaintiff's attorney an additional sum of $400, in stated installments. The point made is that the decree in this respect is void because it runs in favor of the attorney, who is not a party to the action. The point is well taken. A decree in favor of a person who is not a party to the action or proceeding is void because the court has no jurisdiction to make it. *Rolando* v. *District Court,* 72 Utah 459, 271 P. 225; *Brown* v. *Brown* (Ariz.) 8 P. (2d) 452. The decree should be amended so as to make it run in favor of the plaintiff in the case. The amount of the allowance for attorney's fees is also questioned. It is asserted that there is no evidence to support the finding made by the trial court that $500 is a reasonable amount to be paid for

the wife's attorney's fee, and that there is no evidence upon which this court can make an award on that account. We do not agree with either of these contentions. It is true that no witness testified as to what is a reasonable fee to be allowed. But the whole record was before the trial court. The record disclosed all facts that are generally taken into account by the trial courts in this state in making awards for attorney's fees in divorce actions. The same facts likewise appear by the record in this court. Without enumerating them, it is sufficient to say that we think they are ample to support the finding that a fee of $500 is a reasonable fee to be paid for the services of the plaintiff's attorney in the trial court.

The appellant's main contention is that the division of the property and the award of alimony as made by the trial court are unjust and not supported by the evidence. This contention makes it necessary for this court to review the evidence bearing upon those matters and to give its judgment thereon. *Dahlberg* v. *Dahlberg*, 77 Utah 157, 292 P. 214. There is no conflict in the evidence and the controlling facts are not in dispute, except in one minor particular. They are summarized as follows:

These two people intermarried on September 24, 1908. They lived together until about August 1, 1921, when they separated, the husband leaving the family home at the wife's request, and she thereupon commenced this suit. There have been three children born of the marriage. At the time of the trial, which was not had until the spring of the year 1931, the oldest child, a girl, was twenty years of age, which is two years past the age of majority under our laws, and was self-supporting. She was employed in her father's office at a wage of $70 per month and lived with her mother; the next child, a boy, was fifteen, and the youngest, a girl, was thirteen; and they also lived with their mother.

The wife at the time of the trial was forty-three years of age. She was in poor health, she had never worked, and it does not appear that she has any trade, profession, or

calling at which she can earn a living for herself. She owned no property, except the furniture in the apartment in which she resided, and had no income whatever except a monthly allowance paid to her by her husband. For a few years after the separation she continued to reside in the family home and the husband paid her an allowance of $250 per month for the support of herself and the children. Later she moved to an apartment and sold the furniture in the home and purchased new furniture. The husband then took possession of the home and has since been receiving $45 per month rental therefrom. Some years ago the allowance was reduced to $180 per month; still later, when the oldest child attained her majority and became self-supporting, it was reduced to $160 per month, which is the amount the husband was paying at the time of the trial. The wife testified that it required $200 per month to support herself and the two minor children in the manner in which they were then living; that she had been unable to live within the allowance then being paid her, without running in debt; and that she was then in debt about $200. She was paying $47.50 per month for the rent of a three-room apartment; she thought she needed a five-room apartment, which would cost more.

The husband is a physician and surgeon, practicing his profession in Salt Lake City. We do not find in the abstract any direct evidence as to his age, but we think it may be inferred that he is near middle age. His health is failing. He is afflicted with valvular heart trouble and chronic nephritis. These afflictions are incurable and progressive. One of his physicians has informed him that he ought to cut down his physical activity by one-half; that he ought to be relieved of all night work and limit his work to hospital and office practice; that unless he limits his physical activity, he is going to break down.

At the time of the trial he owned a home on Ninth East street in Salt Lake City, which he testified was worth about

$4,000, and which he was renting for $45 per month, but which the trial court nevertheless found was worth $3,500. He also owned some office furniture, books, and instruments, the value of which is not given in the evidence; fifty shares of the capital stock of the Openshaw Investment Company, worth about $3,500; ten shares of the capital stock of General Motors Corporation, worth about $450; and he had $600 or $800 in the Deseret Building Society; he owned some coops and about 200 chickens value not given; and an old automobile, worth about $200, which he used in his practice. This property had all been accumulated during the marriage from his earnings. Against the stock in the Openshaw Investment Company he owed an indebtedness on two notes aggregating $6,300, on which some payments had been made but the amount thereof not shown; and whatever income accrued to him from the said stock was credited on the debt.

His average monthly income from the practice of his profession during the four months immediately prior to the trial of this case was $1,072.25; in addition to which he was receiving $45 per month from the rent of the home, making a total gross income of $1,117.25 per month. He testified that his income then was, and for several months last past had been, considerably less than it was when this suit was commenced; that he had been unable to save anything during the past five years and frequently had to incur overdrafts at the banks to meet his bills; and that he had not taken a vacation in twelve years.

The evidence shows without question that he had monthly expenses amounting to $721. This is for office expenses and expenses in connection with his poultry enterprise; it also includes an item of $38 which he estimated was about what he spent for the benefit of or gave to his minor children aside from the allowance which he paid to his wife; and it also includes an item of $150 per month which he estimated to be the amount of his personal living expenses,

of which $35 is for the rent of a room where he lives. He testified that he was also paying $35 per month on a savings account in a building and loan company.

In addition to the foregoing, he estimated that he had the following monthly expenses: Drug bill at the Medical Arts Pharmacy, $243; same at the Prescription Pharmacy, $28; to James M. Reeves Company, for instruments and supplies, $72.25; automobile expenses, $125; automobile repairs and upkeep, $35. These items are or were questioned by respondent. There is no way upon the record by which their accuracy may be definitely determined, for many of the purchases were made for cash of which no record was kept. He was corroborated to some extent with regard to some of the items by other witnesses; but there is here also some slight basis for the intimation that some of these bills are for purchases made upon his credit by the other woman in the case. However, it does sufficiently appear that some of them are for expenses incurred in connection with the practice of his profession; and hence to that extent they ought to be deducted from his gross to arrive at his net income. The total of the foregoing items is $503.25.

Besides the expenditures mentioned in the two paragraphs immediately preceding this one, he has been paying his wife $160 per month. Adding this to the $721 of unquestioned expenses gives $881; and deducting this from his income of $1,117.25 leaves 236.25 as a net income which is not questioned by respondent; that is, she does not claim that his net income is more than that sum. If from this is deducted $35 per month which he has been paying on the building and loan account, we have $201.25 to be accounted for in the disputed items.

It is evident from the foregoing that appellant in recent years has been spending more money than he has been receiving, and that his testimony that he has been running behind must be accepted as true.

The assigned cause for this divorce is cruelty. But according to the findings made by the trial court the cruelty

consisted in this: That the defendant, against the will and over the protest of the plaintiff, has associated with another named woman, with whom he resides and who, with his knowledge and consent, has taken the name of Openshaw and holds herself out as his wife; and that children residing in the home of the defendant and said woman have taken the name of Openshaw and hold themselves out as the children of the defendant and said woman; and that the defendant has stated to plaintiff since their separation that he did not care for her and that he desired her to obtain a divorce and that if she did not obtain a divorce, he would attempt to do so.

The defendant testified, and in this respect he is not disputed, that in addition to paying the allowance above mentioned to his wife, he has been paying his daughter who worked in his office the sum of $70 per month; that he has paid to his wife more than the court orders required him to pay, sometimes $5, sometimes $10, and sometimes as much as $25 to $30 per month, when he had the money; and that whenever the children came to him for clothing they had never been denied; that he paid the son $4 per week for a little salary which he earns around the chicken coops, and besides this gives him spending money and takes him to meals and places of amusement; that during the summer months when the boy is not in school he pays him $8 to $10 per week to encourage him to save and allows him whatever he gets from the sale of poultry products; that he has purchased the clothing for the youngest daughter and paid for her music lessons; and that he intended to provide a college education for the boy and also for the youngest daughter if she wanted it. There is other testimony along this same line, showing that appellant, although separated and estranged from his wife, is yet upon good terms with their children and is not unmindful of his parental duties and obligations toward them.

The trial court by its decree awarded the home on Ninth East street to the wife, and gave her the furniture in

her apartment. The home is substantially one-half in value of all of the husband's property. We see no injustice in this award, in view of the facts in this case above stated. This wife has been grievously wronged in her matrimonial rights. It is made manifest from the trial court's finding to which we have referred that she has been abandoned by her husband for another woman, with whom he lives and is rearing a family in violation of the solemn compact which he made with his wife when he married her. The husband's wrongs have destroyed the marriage contract and the relationship which she had a right to assume would exist so long as they both should live. Whatever hope or expectation she might have entertained, or whatever assurance the law gives her, that she would, if she survived him, ultimately be provided for in her declining years out of his property or by his bounty, has been shattered by this divorce. In all probability her only assurance against want is what she might recover by this action. An award of property valued at $3,500 or $4,000, even though it be one-half in value of all of the husband's property, seems little enough to give in compensation for the loss which this wife has sustained by reason of the husband's wrongs.

In regard to the alimony the appellant admits that he is liable for a reasonable sum for the support and maintenance of the two minor children. Indeed, judging from his past conduct in this respect and from his attitude as disclosed in his testimony, we think it safe to say that he would continue to provide for his children to the best of his ability even without any court order requiring him to do so. But he claims that if the award of one-half of his property to his wife be sustained, then she is not entitled to any alimony; and hence the decree ought to be reversed and the alimony reduced to whatever sum is found to be reasonably necessary for the support of the minor children.

To this claim we do not accede. It is an ancient doctrine of the common law that it is the duty of a husband to support his wife. Such is still the law of this state, despite

the many changes which have been made in modern times in the law respecting the civil and political status of married women. This duty of support does not end ■■■ when the marriage is dissolved by a decree of divorce rendered at the suit of the wife for the husband's matrimonial wrongs; but it continues so long as they both shall live, the wife remains unmarried and needs such support, and the husband is able to provide the same. It is measured by the wife's reasonable needs and requirements, considering her condition and station in life, and the husband's ability to pay.

So far as the wife here is concerned, we are satisfied from the evidence that an income of about $200 per month is not more than is reasonably necessary to maintain her and the two minor children in the manner in which they have been accustomed to live. This is about what she will receive if the decree be permitted to stand and if she rents the home for $45 per month and pays the taxes and upkeep on the property out of the rent. It is also about what the husband has been paying, considering the allowance and other expenditures which he has been making for the children. But there is no particular controversy between the parties concerning the wife's needs.

The real question in controversy is: Can the husband pay an allowance of $175 per month? He says he cannot and that the decree is oppressive for that reason. The evidence seems to bear out his contention to some extent. His health is failing. Unless he slows up in his work, according ■■■ to the testimony of his physicians, who seem to be disinterested witnesses, he will suffer a breakdown. His income in recent years from the practice of his profession has been falling off and will fall off more when he reduces the extent of his practice. He has been unable to save anything during the last five years, except the small savings in the building and loan account; but this has been more than offset by his borrowings. Part of his financial troubles, no doubt, but we are unable to say from the record how much,

is due to the fact that he has been supporting another family. But this is something that cannot be helped by the court, though it should not be palliated. The same situation often arises when a divorced man marries again. Furthermore, his income will be reduced $45 by the loss of the rental from the home, but his expenses will likewise be reduced to the extent of the taxes and upkeep on the property. In view of all these facts it does seem to us that an allowance of $175 per month is somewhat too high, being more than he is able to pay; and that the findings, conclusions of law, and decree ought to be modified in this respect, and findings, conclusions, and decree made and entered requiring the defendant to pay to his wife until the further order of the court the sum of $150 per month for the support of herself and the two minor children.

The trial court expressly retained jurisdiction of the case to make changes in the decree respecting the payments to be made for the benefit of the wife and children that may be necessary and proper from time to time as the circumstances and condition of the parties may require. We approve this provision of the decree. So that whatever order be made at this time is not final. It may be changed from time to time, upon notice and proper showing, to suit the changes which may occur in the condition and situation of the parties.

As has already been stated, the appellant by his testimony and past conduct has manifested a laudable disposition to do whatever his circumstances may permit toward the support, maintenance, and education of his children; and therefore we feel that if he can do more for them than the order requires of him, and if the children need it, he will continue the practice which he has followed in the past in providing for their welfare.

At the time this case was submitted to this court, an order was made requiring the appellant to pay to respondent the sum of $25 for suit money and $100 for her attorney's fees

on appeal; and the matter of an additional allowance for these purposes was to be disposed of later. We think the amount already allowed is sufficient. Therefore no further allowance on either account will be made. The order of this court ought to be that the decree be amended and modified with respect to the costs, the attorney's fees, and the monthly payments as above stated; and as so amended, that it be in all respects affirmed. The appellant to pay the costs incurred by himself, and respondent to pay her costs out of the award already made to her for that purpose.

It is so ordered.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.