350 P.2d 626

**WALKER BANK AND TRUST COMPANY,
a corporation, Plaintiff and Respondent,**

**v.**

**NEW YORK TERMINAL WAREHOUSE
COMPANY, Inc., a corporation,
Defendant and Appellant.**

No. 9098.

Supreme Court of Utah.

April 6, 1960.

Fabian & Clendenin, Bryce E. Roe, Salt Lake City, for appellant.

Ray, Rawlins, Jones & Henderson, Donald B. Holbrook, Salt Lake City, for respondent.

CALLISTER, Justice.

This action was brought by the plaintiff bank against the defendant warehouse company to recover for the conversion of cer-

tain appliances against which the defendant had issued to the plaintiff nonnegotiable warehouse receipts. A trial of the cause to the court resulted in findings and judgment in favor of the plaintiff and defendant appeals.

In the spring of 1956, plaintiff entered into a credit arrangement with one John R. Woods, a wholesale appliance dealer. Under this arrangement Woods would borrow money from the bank and as security for the payment of the loan the bank received nonnegotiable warehouse receipts from the defendant against merchandise stored by Woods in the defendant's Salt Lake City warehouse.

The warehouse receipts issued by the defendant to the plaintiff contained a provision that the "responsibility of the warehouseman with respect to the goods in storage is defined in the Uniform Warehouse Receipts Act of the state wherein the warehouse is located." Utah's Uniform Act is found in Title 72, U.C.A. 1953.[1]

Upon receipt of goods at the local warehouse the storekeeper would send a receiving report to the defendant's office in Los Angeles, California. From that report the Los Angeles office would prepare a warehouse receipt and forward it to the plaintiff and a copy to the local storekeeper. As deliveries were requested by Woods, the storekeeper would prepare a delivery order on forms supplied by defendant and send the original to plaintiff and a copy to the Los Angeles office. Attached to the delivery order sent to plaintiff would be a check, drawn by Woods on the plaintiff bank, in an amount equal to the declared value of the goods described in the delivery order.

1. Pertinent provisions of the act are:
  "72-1-8. A warehouseman in the absence of some lawful excuse provided for by this title, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with:
  "(1) An offer to satisfy the warehouseman's lien.
  \*    \*    \*    \*    \*
  "In case the warehouseman refuses or fails to deliver the goods in compliance with such a demand by the holder or depositor, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal.
  "72-1-9. Justification of warehouseman in delivering.—A warehouseman is justified in delivering the goods, subject to the provisions of the three following sections, to one who is:
  "(1) The person lawfully entitled to the possession of the goods, or his agent;
  "(2) A person who is either himself entitled to delivery by the terms of a nonnegotiable receipt issued for the goods, or who has written authority from the person so entitled either indorsed upon the receipt or written upon another paper; or \*  \*  \*
  "72-1-10. Warehouseman's liability for misdelivery.—Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them, the warehouseman shall be liable as for conversion to all having a right of property or possession in the goods, if

If there were sufficient moneys therein to cover the check, the plaintiff would charge Woods' account accordingly, sign the delivery order and mail it to defendant's office in Los Angeles. Receipt of this signed delivery order was defendant's authorization to deliver the goods from its Salt Lake warehouse.

Often, there would not be sufficient funds in Woods' account to cover checks attached to delivery orders. In these instances, with one or two possible exceptions, the plaintiff would delay the signing and mailing of the delivery order until such time as Woods' account was sufficient to pay the check.

On May 10, 1957, without notifying plaintiff, the defendant closed its warehouse in Salt Lake City. Following the closing of the warehouse plaintiff received from defendant five delivery orders, together with attached checks of Woods. The checks, with one exception, were made payable to plaintiff in an amount equal to the declared value of the merchandise described in the attached delivery orders. The one exception was a check, blank as to date, payee and amount, attached to an order dated May 7, 1957. The other four checks bore dates subsequent to the date of the delivery order to which they were attached.

The goods described in these five delivery orders were covered by warehouse receipts issued by defendant to the plaintiff and held by plaintiff as security for Woods' indebtedness. Neither the indebtedness (which exceeds the value of the goods) nor the checks have been paid and Woods has been adjudicated a bankrupt.

■ Defendant first contends that the lower court erred in denying a motion to dismiss made at the close of plaintiff's case. It is argued that the plaintiff made no affirmative showing that it had made a demand upon defendant for delivery of the goods or had offered to satisfy the warehouseman's lien. This contention is without merit because it was stipulated by the defendant at the pretrial that the goods had been delivered to persons other than the plaintiff. Demand for delivery is excused where it would be unavailing and useless.[2] The defendant could not have made delivery of the goods had the plaintiff so demanded. Whether or not plaintiff offered to pay the storage charges is immaterial, because defendant's refusal to deliver was based on grounds other than an unsatisfied warehouseman's lien.[3]

■ Defendant next contends that there existed an agreement between it and the

he delivers the goods otherwise than as authorized by subdivisions (2) * * * of the preceding section; * * *."

2. 93 C.J.S. Warehousemen & Safe Depositaries § 72c, p. 509; Woldson v. Davenport, 169 Wash. 298, 13 P.2d 478, 481.

3. 93 C.J.S. Warehousemen & Safe Depositaries § 72b, p. 508; Del Gaizo v. Gallagher, 127 Pa.Super. 53, 192 A. 144.

plaintiff whereby it was authorized, without first receiving a signed delivery order from plaintiff, to deliver the goods to Woods upon obtaining a check from Woods. This agreement, according to defendant, is evidenced by the following correspondence:

"First Murray Branch
"Murray 7, Utah
"October 16, 1956

"H. A. Robbins
"Vice President-Manager
"New York Terminal Warehouse
Company, Inc.
"520 West Seventh Street
"Los Angeles 14, California

"Attention: Mr. Jack Holt

"Gentlemen:

"We are presently financing against your warehouse receipts for the John R. Woods Company, Salt Lake City, Utah. These receipts cover appliances, and it is our method of operation that these units, one or more, be paid for at the time they are withdrawn.

"This is to advise you that this is the manner in which we will handle all transactions which we presently have or may have in the future.

"s/ H. A. Robbins
"H. A. Robbins
"Vice President-Manager

"HAR:ec
"cc: John R. Woods Company"

"New York Terminal Warehouse Co.
"520 West Seventh Street
"Los Angeles 14, California

"November 12, 1956

"Mr. H. A. Robbins, Vice President
"Walker Bank & Trust Company
"Murray 7, Utah

"Dear Mr. Robbins:

"I have been away from the city most of the time for the past three weeks and apologize for being so late in answering your letter of October 16th, relative to delivery of goods from our Warehouse No. 2552-2 operated for John R. Woods Co.

"I asked Mr. Woods to arrange with you the method of delivery which you wanted to authorize of material from the warehouse under the warehouse receipts which you are holding, and from your letter interpret that you wish to authorize delivery from the warehouse upon the receipt, by our Storekeeper, of a check from John R. Woods Co. I am attaching for your inspection, and modification if you so desire, an outline of Delivery Instructions which are often tendered to us by warehouse receipt holders for the delivery of goods from our warehouses.

"I think you will find that the instructions as outlined give protection

to both the warehouse company and the Bank and set definite limits on the operation of the warehouse. We would like very much to have our delivery instructions from you in somewhat the outlined form, in triplicate. Please understand that we can and will operate within any limits that you set.

"If you have any questions, as to this or any other phase of the operations, do not hesitate to write to us.

"Very truly yours,

"Incorporated
"New York Terminal
  Warehouse Co.
"s/ C. J. Holt
"C. J. Holt
"Vice President"

The plaintiff never responded to the defendant's letter of November 12, 1956, nor did it make use of the proposed delivery instructions attached to the letter. The proposed instructions contained, among others, the following provision:

"These instructions executed by us [defendant] shall become effective only upon your [plaintiff] delivery to us of a duly executed copy thereof signed by one of your officers evidencing acceptance of the provisions contained herein. Upon becoming effective, shall supersede all previous instructions and shall remain in full force and effect until amended or cancelled by the bank in writing."

Mr. Robbins, vice-president of the plaintiff bank, testified that his letter of October 16, 1956, was not intended to reflect any changes in his methods of operation, and that following the exchange of correspondence the bank still obtained payment of the checks accompanying the delivery orders before it would execute and deliver the orders to the defendant.

Under the circumstances of this case the failure of plaintiff to reply to defendant's letter of November 12, 1956, did not constitute an acceptance by plaintiff to a modification of the original agreement whereby the defendant was not to deliver goods until it had received written authorization from the plaintiff.

The letter from Mr. Robbins was simply a letter informing the warehouse office of the existence of the credit arrangement between the bank and Woods. The letter from the warehouse to the bank can be considered as nothing more than an offer to modify the existing contract terms. The offer was not conditioned to be accepted by silence but expressly stated that the bank was to accept by returning some sort of "Delivery Instructions." The instructions were not sent and therefore the offer of modification was not accepted.

■ The goods described in the warehouse receipts in question had been de-

livered out of the warehouse by defendant to someone other than the plaintiff. The invoices of delivery indicate that in some instances the goods were delivered many months prior to the time the delivery orders were received by the bank, as the dates thereon indicate. Mr. Robbins expected "that these units, one or more, be *paid* for at the time they are withdrawn." (Emphasis ours.) It thus appears from the evidence that the warehouse failed to comply with the terms of their agreement.

Defendant complains that the lower court erred in admitting certain evidence offered by the plaintiff and excluding certain evidence offered by the defendant. An examination of the record fails to sustain this contention.

█ Nor did the lower court err in denying defendant's motion for a new trial on the ground of newly discovered evidence. It does not appear from the record that the evidence could not, with reasonable diligence, have been discovered and produced at the trial.

██ Finally, defendant assigns as error the denial of the lower court to grant defendant's motion to strike plaintiff's cost bill and in allowing plaintiff its costs. Utah Rules of Civil Procedure, rule 54(d) (2), provide that a party claiming costs must within five days after entry of judgment file a verified memorandum of costs. Within the time period plaintiff filed an unverified memorandum of costs. Defendant filed a motion to strike the cost bill and the plaintiff, several days after the expiration of the five-day period, moved for leave to file a supplemental memorandum. This latter motion was granted and plaintiff filed a verified supplemental memorandum of costs, and the court then awarded plaintiff its costs. We believe this was error. Costs were not recoverable at common law, and the right to recover them is purely statutory.[4] The plaintiff, having failed to file a verified memorandum of costs within five days after entry of judgment, is not entitled to an award for costs.

The judgment is modified to the extent that the cost bill should be stricken, and as so modified the judgment is affirmed. Costs on appeal to respondent.

CROCKETT, C. J., and WADE, HENRIOD and McDONOUGH, JJ., concur.

4. Houghton v. Barton, 49 Utah 611, 165 P. 471.