HIGHLAND CONSTRUCTION
COMPANY, a corporation,
Plaintiff and Appellant,

v.

UNION PACIFIC RAILROAD COMPA-
NY, a corporation, et al., Defendants
and Respondents,

v.

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, Third Party
Defendant and Appellant.

No. 17900.

Supreme Court of Utah.

Feb. 3, 1984.

Merlin R. Lybbert and Rex E. Madsen, Salt Lake City, for Highland.

Richard H. Nebeker, Salt Lake City, for third party defendant and appellant.

James P. Cowley, Robert A. Peterson, David A. Greenwood, Salt Lake City, for defendants and respondents.

HOWE, Justice:

Plaintiff, Highland Construction Company, appeals from a directed verdict of no cause of action for failure to introduce any admissible evidence of the quantity of damages it allegedly had sustained under a construction contract. The appeal is taken against Dravo Corporation, Carbon County Coal Company and its general partners, Rocky Mountain Energy Company and Dravo Coal Company, hereinafter collectively referred to as Carbon; Lamb Engineering & Construction Company (Lamb); and Michael R. Lamb and James R. Lamb, as well as Industrial Indemnity Company. None of the other parties is before us on this appeal for reasons not relevant to our review.

Plaintiff was the successful bidder on concrete substructures and piping work to be installed in a coal handling facility under construction near Hanna, Wyoming. On March 26, 1979 Highland entered into a written subcontract with Lamb which was the general contractor for Carbon, owner of the facility. The bid price was $1,097,-325. Completion of the work under the subcontract was scheduled for August 15, 1979.

On July 9, 1979 Lamb partially terminated Highland's work for its failure to comply with working schedules on four of the concrete foundations under construction. Highland was allowed to continue the remaining contract work, but was completely terminated on December 27, 1979, after three additional partial terminations by Lamb in August, September and October of that year.

Highland filed suit against Lamb, Carbon and Lamb's surety, Industrial Indemnity Company, Richard R. Lamb and James R. Lamb, alleging breach of contract, breach of fiduciary duty, conspiracy, quantum meruit, tortious interference with contractual rights, business interference and economic duress, as well as punitive damage claims. Lamb counterclaimed for breach of contract and resulting damages for costs which it incurred in substituting work to be performed by Highland, and for losses due to winter work and business reputation damages. The case was tried before a jury. At the end of the liability phase of its case, Highland proffered evidence on a "total cost" theory and the opinion of its expert that Highland's damages approximated its total expenditures on the job (which included a built-in profit), less the amount it had been paid by Lamb. No allocation of damages among the various defendants was made. Defendants objected to that proffer, the objection was sustained, and Highland rested without further proof of damages. Defendants then moved the court for a directed verdict which the court granted. Judgment was entered in favor of all defendants, no cause of action. The trial proceeded on Lamb's counterclaim. The jury returned a verdict on special interrogatories against Highland, awarding damages in the sum of $242,660.25 as a result of Highland's breach of contract.

Highland appeals, citing error by the trial court as follows:

1. Failure to allow Highland to proceed on total costs, quantum meruit, or "jury verdict" theories, and ruling that Highland was not entitled to loss of business or punitive damages.

2. Refusal to accept some of Highland's jury instructions, and the submittal to the jury of a special verdict form favoring Lamb's theories.

3. Ruling that there was no evidence of improper conduct on the part of Michael R. Lamb and James R. Lamb.

4. Exclusion of Highland's expert witness testimony.

5. Award of costs to defendants Lamb and Carbon not contemplated by law.

## I.

■ The record before us is voluminous and covers the entire liability phase of Highland's case against Lamb which it presented at trial stretching over a period of two months. We have diligently reviewed the testimony adduced; however, space will not allow but the briefest reference to some of the crucial points. We will view the evidence in a light most favorable to the party against whom the verdict was directed, in order to determine whether Highland had established a prima facie case. *Cruz v. Montoya,* Utah, 660 P.2d 723 (1983) and cases cited therein; *Lindsay v. Gibbons and Reed,* 27 Utah 2d 419, 497 P.2d 28 (1972).

## II.

Highland's first assignment of error is the trial court's refusal to admit evidence of damages based on total costs, quantum meruit, and "jury verdict" theories. After rejecting Highland's proffer, the court made the following finding:

> As to the defendant Lamb Engineering & Construction Company, there is no evidence before the court that its conduct, misconduct, actions, inactions and/or breach of contract caused any damage to any other party or parties to the above-entitled action.

Highland contends that the court should have allowed evidence that Highland's total costs incurred for its partial construction of the concrete structures and piping work were $2,317,172.66, and that after a credit of $413,763.04 paid by Lamb, Highland was entitled to $1,903,409.62. Highland's bid to Lamb was $1,097,325.

■ It is true that some degree of uncertainty in the evidence of damages will not relieve a defendant from recompensing a wronged plaintiff. *Bastian v. King,* Utah, 661 P.2d 953 (1983) and cases cited therein. However, it is also a general rule of long standing that a plaintiff must show damages by evidence of facts and not by mere conclusions, and that the items of damage must be established by substantial evidence and not by conjecture. *Bunnell v. Bills,* 13 Utah 2d 83, 90, 368 P.2d 597 (1962); *Bingham C. & L. Co. v. Board of Ed.,* 61 Utah 149, 159, 211 P. 981 (1922). And, whether general or special, damages must be traceable to the wrongs complained of. *Ranch Homes, Inc. v. Greater Park City Corp.,* Utah, 592 P.2d 620 (1979).

Highland contends that as a result of the nature of work to be performed it was impossible for it to trace ascertainable and quantifiable damages to the misconduct and/or breach of the various defendants. Therefore, the court below should have let the total costs come in under one of the three theories set out above, and allowed the jury to calculate the amount due as well as allocate percentages among the various defendants.

■ 1. In support of its total cost theory, Highland refers us to several cases which allowed recovery to the plaintiff under that method. All of them are distinguishable. Two major differences pervade all of them: the contractor was either free from fault (or his fault was insignificant) and suit was brought against a single defendant who was blameworthy in causing the contractor's cost overrun. In *Thorn Const. Co., Inc. v. Utah Dept. of Transp.,* Utah, 598 P.2d 365 (1979), the court found for the contractor because a specific false

representation was made by the defendant's engineer's aide that borrow could be used from a certain pit more than 1.7 miles closer to the construction area than the pit the contractor finally had to use. The court allowed the excess cost for hauling the borrow. This was determined by comparing the cost used by the contractor in his bid estimate with his actual cost. Conversely, here, Highland asks for compensation not just for extra work but for the whole project, including the work done under the bid. It failed to trace its claimed damages to breaches of any defendant.

In *J.D. Hedin Construction Company v. United States,* 347 F.2d 236 (Ct.Cl.1965), the primary cause for delay in construction of a V.A. hospital was the government's faulty piling specifications. This delay forced excavations for the foundation to stand open during a stormy period of weather during which the excavations eroded. The contractor incurred extra costs in remedying the effects of the erosion. Resort was had to the contractor's bid estimate which the court found to be reliable and the contractor was allowed to recover on a "total cost" theory the excess cost actually incurred over his bid estimate. The court expressed its dislike for the total cost method and used it only on that one item of damage because there were proper safeguards: it was clear that the government alone was responsible for the damage and the exact amount of damage was difficult to determine. The court specifically rejected total costs on other items of damage that were "susceptible" to precise computation. In the instant case Highland could not support its claim that damages flowed from acts of or delays caused by Lamb and/or Carbon, rather than from its own fault. It did not try to tie in its claim for damages with its estimate for any particular cost.

In *H. John Homan Co., Inc. v. United States,* 418 F.2d 522, 189 Ct.Cl. 500 (1969), damages were quantified. The contractor had incurred extra costs which were attributable to the government because it had furnished an improper survey and faulty specifications. The contractor was awarded the cost of labor and overhead in excess of those items in its bid estimate. Conversely here, Highland was unable to show what excess cost it had incurred because of any particular act or inaction by any defendant. Moreover, Highland did not attempt to compare its bid estimate for the cost of any item with its actual cost for that item.

The same fatal distinction is noted in *Moorhead Const. Co. Inc. v. City of Grand Forks,* 508 F.2d 1008 (8th Cir.1975). There an inspection of the site would not then have disclosed the difficult site conditions which caused the problems later encountered by the contractor. The trial court ruled that proper soil conditions under Phase I were to be construed as an implied warranty for the contractor to be able to work on Phase II as anticipated. Moreover, the contract provided for an equitable adjustment for latent physical conditions. We note that Highland was required to perform all extra work under written change orders. The record is replete with statements that those portions of the work performed under change orders were compensated and that despite numerous requests by Lamb to submit change orders on other occasions, Highland repeatedly failed to do so. The record does not indicate that Lamb was reluctant to issue such change orders, but reveals that it urged Highland to cooperate as Lamb made two cents profit for every ten cents profit Highland made. All of Moorhead's expenses were found to have been fully documented and reasonably incurred, *Id.* at 1015; none of Highland's were documented, despite repeated requests by the court to do so when it had to reject as inadmissible summaries of costs prepared after the initiation of the lawsuit. The Moorhead court specifically noted that the trial court's method of total costs was not the preferred method for calculating damages, but "that no other method was feasible and the supporting evidence was substantial." *Id.* at 1016. Four factors of proof were advanced in Moorhead under which that method would be acceptable:

(1) [T]he nature of the particular losses make it impossible or highly impractical to determine them with a reasonable degree of accuracy;

(2) the plaintiff's bid or estimate was realistic;

(3) its actual costs were reasonable; and

(4) it was not responsible for the added expenses.

*Id.* at 1016.

Compared to those guidelines, Highland's fact situation is distinguishable on all but the third point. The record makes it abundantly clear that all extra work performed by Highland was, at the time it was incurred, highly susceptible to precise determination, if change orders had been issued, material invoices segregated, and man-hours separately recorded. Highland's own expert witness, Richard White, dispelled all notions that the bid had been carefully prepared. His testimony confirmed that it was not realistic. Highland did not inspect the site before submitting the bid and the costs of the various components of the job were not separately computed. The bid was more of a haphazard guess than an estimate based on concrete figures. White testified that a realistic bid would have made allowances for remoteness of area, rocky soil conditions, housing and transportation expenses, unfavorable weather conditions at an altitude of 7,000 feet, and sundry other exigencies. None of them was projected by Highland. By its own admissions and contradictory statements on direct and cross-examination, Highland shouldered a major portion of the blame for delays, excessive costs and loss of work.

In rejecting Highland's total cost theory we look for support to similar cases where the plaintiff had failed to quantify damages and was not allowed to ignore the terms of its bid. In *Shocker Const. Co. v. State,* Utah, 619 P.2d 1378 (1980) this Court rejected profits above bid as well as total costs to the extent that the damages were the result of problems plaintiff had with its own internal operations and improper equipment, or were associated with bad weather. *Id.* at 1379. Also *Thorn,* supra, was specifically distinguished in *Shocker* as having been affirmed on the basis of sufficient evidence in contrast to *Shocker,* where plaintiff had failed specifically to associate any portion of its cost with detrimental acts of the defendant. *Id.* at 1380.

In short, Highland failed to prove its increased cost for each alleged problem or breach caused by the defendants, failed to compare its bid estimate with its actual costs for each such problem or breach and failed to prove that defendants were solely responsible for its additional expense. Highland wanted to shorten the process of proof by introducing all of its costs for the entire job. This it may not do.

[F]ailure to make any satisfactory showing of the amount of damages flowing from such breaches would require the dismissal of such causes ...

Recovery of damages for a breach of contract is not allowed unless acceptable evidence demonstrates that the damages claimed resulted from and were caused by the breach. "The costs must be tied in to fault on defendant's part." [Citations omitted.] *Boyajian v. United States,* 423 F.2d 1231, 1235, 191 Ct.Cl. 233, (1970).

The paucity of evidence on causally connected damages cannot be used by Highland as a sword to ignore its bid and recover its costs plus profit instead. The record is barren of the necessary facts from which the jury might have reasonably found the extent or amount of damages flowing from any misconduct of the multiple defendants. In addition, Highland failed to prove causation between its costs and the breach of any particular defendant. See *Boyajian v. United States,* supra; *Huber, Hunt & Nichols, Inc. v. Moore,* 67 Cal.App.3d 278, 136 Cal.Rptr. 603 (1977). Performance under the bid is not excused simply because difficulties are encountered. Recovery under those circumstances is restricted to extra work only. *L.A. Young Sons Const. Co. v. County of Tooele,* Utah, 575 P.2d 1034 (1978).

2. In the alternative, Highland contends that the trial court should have allowed its total cost under quantum meruit. We disagree.

■■■ Under Utah law damages are controlled by the contractual remedies fashioned by the parties unless it can be shown that the work performed was so different from the work contemplated by the contract that additional recovery in quantum meruit is warranted. *Allen-Howe Specialties v. U.S. Const., Inc.*, Utah, 611 P.2d 705 (1980); *Mann v. American Western Life Ins. Co.*, Utah, 586 P.2d 461 (1978). In this case there was a contract clause requiring Highland to submit all proposed extra work in the form of written change orders so that a contractual remedy existed under an express contract. Highland's cases cited in support of an award of quantum meruit damages are all distinguishable. Quantum meruit was the proper recovery where the work was not anticipated under the contract and the contract could for all intents and purposes be considered abandoned. *Lester N. Johnson Co., Inc. v. City of Spokane*, 22 Wash.App. 265, 588 P.2d 1214 (1978); *V.C. Edwards Contracting Co. Inc. v. Port of Tacoma*, 83 Wash.2d 7, 514 P.2d 1381 (1973); *Bignold v. King County*, 65 Wash.2d 817, 399 P.2d 611 (1965); *Wunderlich Contracting Company v. United States*, 240 F.2d 201 (10th Cir.1957), cert. den. 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957). Quantum meruit was also upheld where the subcontractor justifiably ceased work or where the general contractor unjustifiably terminated the subcontractor. *United States v. Algernon Blair, Inc.*, 479 F.2d 638 (4th Cir.1973); *Seaboard Surety Co. v. United States*, 355 F.2d 139 (9th Cir.1966). By contrast, Highland's work was anticipated and the work was performed in pursuance of the contract. Although Highland claimed it had been unjustifiably terminated, it failed to prove in what respects the work performed by it differed from the work contemplated by the contract. Costs incurred in remedying its own faulty work and in repairing its own mistakes were not segregated from those for which Lamb paid and from those for which it did not pay but which actually benefitted some or all of the defendants.

■■■ 3. We have carefully analyzed the cases cited by Highland in support of its "jury verdict" theory of recovery. We also recognize that the Lamb-Highland contract contained an equitable adjustment clause to cover changed conditions. We deduce that Highland was to give Lamb written notice of those changed conditions as a prerequisite to such an adjustment, and that written estimates of the labor and material costs, as well as the impact on the completion date were to be submitted in support. We do not read the cases allowing "jury verdict" recovery under similar equitable adjustment clauses to stand for the proposition that the contract may be discarded in its entirety. Instead, the equitable adjustment is the difference between the amount the work would have cost absent unanticipated changes and the amount it did cost as a result of the altered conditions. *Fattore Co., Inc. v. Metropolitan Sewerage Com'n*, 505 F.2d 1 (7th Cir.1974), holding the parties to the equitable adjustment clause invoked by the plaintiff; *Metropolitan Sewerage Com'n v. R.W. Const.*, 72 Wis.2d 365, 241 N.W.2d 371 (1976), rejecting summary of expenses and remanding for an allocation of costs based upon failures of the respective parties; *Dynalectron Corp. (Pacific Div.) v. United States*, 518 F.2d 594, 207 Ct.Cl. 349 (1975) ordering both plaintiff and the government to share costs where both parties shared responsibility for plaintiff's inability to perform Air Force specifications for jamming devices in electronic countermeasure systems.

In distinguishing these cases from Highland's situation, we are not unaware of Highland's proffered admission that approximately $30,000 damages were the result of Highland's underbid on hoppers and another $50,000 of Highland's own labor inefficiencies. However, these conclusory, unilaterally established sums were barren of any supporting evidence and consequently could not constitute the basis for "jury

verdict" damages of costs plus anticipated profits, minus $80,000.

Highland asks us to find the jury verdict approach consistent with this Court's rationale and holding in *Winsness v. M.J. Conoco Distributors,* Utah, 593 P.2d 1303 (1979). That case dealt with the issue of whether money damages could be determined from the lessee's failure to keep a gasoline service station open 24 hours a day. Suffice it to say that the data submitted to the jury in that case were meticulously compiled to serve as a point of departure for the jury's assessment of damages. Antipodal to that fact situation is the one here under review: Highland could express its loss of efficiency in percentage terms only. It offered no breakdown on breaches of contract, and no breakdown of breaches allocated to the several defendants. No evidence was adduced of requests for time extensions apparently allowed under the contract; no evidence was adduced on work beyond the scope of the contract; no evidence was proffered breaking down the cost of Highland's own errors and delays. By Highland's own admission through counsel it was "absolutely unable to come up with something [in the nature of quantifiable elements of damages] that would be more than just a gut reaction." The insurmountable barrier Highland erected to a successful proffer of damage evidence was its complete inability to make the causal connection between its losses on the project and the commissions or omissions of acts of the defendants or some of them. Although we commend counsel for Highland for their valiant effort to harness what evidence they had at their disposal, Highland simply did not keep the proper records necessary to enable a jury to have some methodology as a tool to properly discharge its function.

We therefore hold that the trial court did not err in refusing to permit Highland to prove its damages under any of the three theories addressed above.

 Highland's related assignment of error, that the trial court improperly ruled that Highland was not entitled to punitive damages and loss of business must also be rejected. It is the general rule in this forum that punitive damages cannot be awarded for a breach of contract unless the breach amounts to an independent tort. *Jorgensen v. John Clay and Co.,* Utah, 660 P.2d 229 (1983), and cases cited therein. There is no evidence to that effect in that portion of the record before us and we affirm the trial court's ruling on punitive damages. Highland's claim for business losses must fail for the same reason that its claim for all other damages fails. Consequential damages will be awarded if the losses resulting from a breach were reasonably within the contemplation of the parties when they entered into the subcontract. *Hadley v. Baxendale,* 156 Eng.Reptr. 145 (Ex.1854). Highland proffered a statement to the effect that it suffered between $785,000 and $1,042,000 in damages. Where the claim for damages remains unsupported by sufficient documentation to allow the jury to reasonably infer a causality between breaches of defendants and losses by Highland, a claim of business losses and consequential damages cannot rise to the level of proof required to permit recovery.

### III.

 We next consider Highland's contention that the trial court committed error in the giving of a special verdict form and in its failure to submit proposed jury instructions on Highland's theories of defenses to Lamb's counterclaim.

Rule 51 of the Utah Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto. In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection." See also *Jensen v. Eakins,* Utah, 575 P.2d 179 (1978). We have before us only that portion of the record that deals with Highland's case which was dismissed by a directed verdict prior to the proceeding of the trial on Lamb's counterclaim. There is thus nothing before us

from which we can learn what the nature of the objections was with respect to rejection of some of Highland's proposed instructions. All we have before us are the instructions themselves with notations made by the trial judge. Notwithstanding the cited requirement of Rule 51, that same rule also gives us the discretion, in the interest of justice, to "review the giving or failure to give an instruction." We have reviewed the instructions cited to us by Highland and conclude that the theories of both parties were covered by those instructions submitted to the jury. We have also reviewed the special interrogatories submitted to the jury on damages incurred by Lamb for the completion of work left undone by Highland. In the absence of any record on proper objections to exhibits supporting the cost of completion, we are relegated to assessing the propriety of the instructions from their face. We note that the jury answered all of the special interrogatories, reduced the cost of claimed capital to one-fourth and the fee of administering completion of the work to less than one-fifth of the amounts asked for by Lamb. Answering the special interrogatory on consequential damages, the jury denied in its entirety an amount of nearly $400,000. It would be difficult to suggest that such discriminatory evaluation showed prejudice to Highland. All instructions considered together show that the trial court properly presented the issues to the jury. *Gilhespie v. DeJong*, Utah, 520 P.2d 878 (1974); *Startin v. Madsen*, 120 Utah 631, 237 P.2d 834 (1951). We conclude that Highland's claim of error in instructing the jury is unfounded.

### IV.

■ The trial court's findings and judgment stated that "as to the defendants Michael R. Lamb and James R. Lamb, there is no evidence as to any improper conduct, misconduct or breach of contract, nor is there any other evidence before the court upon which they could be found liable to any other party or parties to the above entitled action." Highland assails this ruling as not being supported by the evidence.

We have carefully considered the portions of the record cited to us by Highland and find several inconsistencies. Highland's statement that there was a total termination of Highland's subcontract on July 10, 1979 by these individual defendants is not supported by the record. There was a partial termination only on the fine coal reclaim tunnel, the loadout structure foundation, the transfer tower foundation and the drive building #1 foundation, on all of which Highland was found to be in default. All other aspects of the work continued under the contract. The only other reference to any misconduct was the taping of a conference between Lamb and Highland without Highland's knowledge. No evidence was adduced that Highland suffered damages at the hands of these individual defendants as a result thereof. There was no proffer of evidence of damages attributable to them personally. We find no error in their dismissal from the action.

### V.

■ Highland's next assignment of error deals with the exclusion of the testimony of Highland's expert witness, Richard White, who was a potential bidder on the coal facility project as a prime contractor. Highland offered Mr. White's testimony as an expert in the construction industry with respect to a hypothetical question that late delivery of plans, unavailability of construction sites, incomplete and defective plans and similar negative conditions would have an adverse effect upon man and equipment hours, and that it was not practical or possible to quantify and assign dollar value to each of those conditions. The court sustained defendants' objections on the ground that it would not be helpful to the jury to ask the witness hypothetically "whether if plans were delivered late it causes problems, and to have him say yes." The court conceded that testimony would be allowed if the witness could base his opinion on the evidence given by other witnesses with respect to plan delays and other problems. The court found that those witnesses up to that point had been "singu-

larly unable" to quantify damages. It suggested that Highland acquaint its expert witness with the record for illustrations of those elements supporting his testimony. Highland declined to analyze the record, stating that the proffer made was sufficient for the purposes intended. It cited no data upon which the expert could base his opinion.

The Utah Rules of Evidence in force at the time of trial of this case[1] permitted testimony by an expert in the form of an opinion if those opinions were "(a) based on facts or data perceived by or personally known *or made known to the witness at the hearing,* and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness." Rule 56(2), Utah Rules of Evidence. [Emphasis added.] "The expertise of the witness, his degree of familiarity with the necessary facts, and the logical nexus between his opinion and the facts adduced must be established." *Edwards v. Didericksen,* Utah, 597 P.2d 1328, 1331 (1979). See also *Day v. Lorenzo Smith & Son, Inc.,* 17 Utah 2d 221, 226, 408 P.2d 186 (1965).

Rule 56(2) and the case law support the trial court's ruling. The testimony was properly excluded so long as the witness was unable to give his opinion based upon data made known to him at trial, as, absent personal knowledge of the facts, this was the only ground on which the evidence could have come in. We therefore affirm the trial court's ruling on this issue.

## VI.

Finally, Highland contends that costs were improperly awarded to the defendants. Inasmuch as separate memoranda of costs were filed by Lamb and Carbon, our approach to the issue will be bifurcated.

■ We first deal with the propriety of the award to Lamb. Lamb's cost memorandum was filed· on July 2, 1981, and Highland's motion to have Lamb's bill of costs taxed was filed on July 9, 1981, within the seven-days' period allowed under Rule 54(d)(2) of the Utah Rules of Civil Procedure. The total bill came to $2,526.75, of which $2,280.75 was for depositions of Highland's witnesses. Highland contends the cost of the depositions was not awardable. Although there has been some controversy on this question in our forum, the majority of this Court has consistently held that the costs of depositions are taxable "subject to the limitation that the trial court is persuaded that they were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case." *Frampton v. Wilson,* Utah, 605 P.2d 771, 774 (1980) and cases cited therein; *Thomas v. Children's Aid Society of Ogden,* 12 Utah 2d 235, 239, 364 P.2d 1029 (1961). In *First Security Bank of Utah, N.A. v. Wright,* Utah, 521 P.2d 563, 567 (1974), where we upheld the trial court's denial of deposition costs, we stated that "[t]he burden is upon the claiming party to establish that they are necessary and reasonable; the determination of whether that burden is met is within the sound discretion of the trial court; ..." For the guidance of both the trial courts and counsel we would allow deposition costs as necessary and reasonable where the development of the case is of such a complex nature that discovery cannot be accomplished through the less expensive method of interrogatories, requests for admissions and requests for the production of documents. The award of costs should be narrowly made to guard against abuse by those better financially equipped lest costs of seeking justice become prohibitive for the financially ill equipped.

■ Even under this restriction, we find no abuse of the discretion of the trial court in awarding the costs of depositions of Highland's witnesses. The complexity of a construction case and the theories of recovery sought to be used here made it

---

**1.** The Utah Rules of Evidence were amended effective September 1, 1983, to align them with the Federal Rules of Evidence.

virtually impossible to obtain sufficient information for the preparation of the case through more conservative methods of discovery. Moreover, the depositions were used at trial on cross-examination, both to impeach veracity and to refresh memory. We therefore affirm the trial court's award of costs to Lamb in its entirety.

 The award of costs to Carbon in the amount of $12,712.46 is another story. The findings and judgment on the directed verdict against Highland were filed on April 27, 1981. Carbon's memorandum of costs was filed May 5, and Highland's motion to strike Carbon's costs, though signed May 11, was not filed until May 15. Both parties were thus outside the limitations permitted by Rule 54(d)(2) of the Utah Rules of Civil Procedure. However, the paramount issue presents itself: Did the trial court err in awarding Carbon its costs when the memorandum of costs was not filed as required by the rules? We hold that it did.

This court has previously held that an unverified memorandum of costs filed within the five-day period did not entitle the plaintiff to an award of costs, and that it was error to permit the filing of a supplemental, verified memorandum thereafter. *Walker Bank & Trust Co. v. New York Terminal W. Co.*, 10 Utah 2d 210, 350 P.2d 626 (1960). The rationale of the Court in that decision that "[c]osts were not recoverable at common law, and the right to recover them is purely statutory" (*Id.* at 216, 350 P.2d 626) is equally applicable where no memorandum at all was filed within the five-day period permitted by the rule. Decisions under similar former statutory law support a strict construction of this rule. *Nelson, et ux. v. Arrowhead Freight Lines, Limited*, 99 Utah 129, 104 P.2d 225 (1940); *Openshaw v. Openshaw*, 80 Utah 9, 12 P.2d 364 (1932). The memorandum of costs should be stricken and Carbon required to bear its own costs with one exception. As the trial progressed through the district court, Carbon ordered and paid for a daily transcript of the testimony. When this appeal was filed by Highland, it certified as part of the record those transcripts and Highland has used them extensively in this appeal. It is therefore equitable that Highland should reimburse Carbon for the transcripts at the rate charged if they had been produced at the conclusion of the trial in the usual manner for appeal purposes and not on the more expensive daily rate basis. We remand to the district court to determine that cost and we award that amount to Carbon as a cost on appeal.

## VII.

In sum, we reject Highland's various total cost theories to recover damages, as we have consistently done in similar cases in the past, where the costs were attributable to work covered by the contract, either under the bid, or through change order provisions. Parties to a contract must remain free to enforce the terms of their agreement and the contractor must be held to the terms of his bid, particularly where he is unable to connect additional costs with any particular breach on the part of any particular defendant. The issue of quantifiable damages pervaded all other issues presented by Highland on appeal.

With the exception of the award of costs to Carbon, the judgment, as modified, is affirmed in its entirety. Costs on appeal are awarded to Lamb; no appeal costs are awarded to Carbon except as heretofore noted.

HALL, C.J., and CHRISTOFFERSEN, VeNOY and GOULD, CALVIN, District Judges, concur.

OAKS and DURHAM, JJ., having disqualified themselves, do not participate herein, CHRISTOFFERSEN and GOULD, District Judges, sat.

STEWART, J., does not participate herein.